25257. WARNELL *et al. v.* PONDER *et al.*

DECIDED JUNE 8, 1936. REHEARING DENIED JULY 24, 1936.

*W. G. Warnell, J. P. Dukes,* for plaintiff in error.

*Hitch, Denmark & Lovett, P. M. Anderson, R. B. Morris,* contra.

JENKINS, P. J. ■ The verdict in favor of the plaintiff vendees for $420 principal, and $134.75 interest, of the $2932.16 damages claimed on account of alleged misrepresentations by an agent, and failure to deliver part of the pine-tree boxes and other personalty

purchased with a turpentine plant, was authorized under the conflicting evidence. There is no exception to the recovery of interest as such.

The brief of evidence, approved by the judge, refers to the introduction of an "Exhibit A," described as a bill of sale executed by the defendants to the plaintiffs, and to an "Exhibit B," a copy made by an agent of the defendants from an original schedule of properties connected with the business sold, which copy it was testified was the basis of the agent's representations. These exhibits appear to have been introduced without objection. However, neither is referred to in the bill of exceptions or the certificate of the judge thereon, or in his approval of the brief of evidence. Neither is copied as an exhibit or set out in the pleading, or copied or briefed in the brief of evidence or in the approved grounds of the motion for new trial. "Exhibit A," as contained in the record, merely follows the brief of evidence and the order of approval thereon, and contains no verification or identification by the judge. No "Exhibit B" is copied or briefed anywhere in the record. Under well-settled rulings of the appellate courts, exhibits which are not contained or briefed in the approved brief of evidence or the certified bill of exceptions or approved grounds of the motion for new trial, and which are not specially verified or identified by the judge, can not be considered; and exceptions which require reference to such exhibits can not be passed upon. Code, § 70-305; *So. Ry. Co.* v. *Dantzler,* 99 *Ga.* 323 (25 S. E. 606); *McGraw* v. *Crosby,* 129 *Ga.* 780 (59 S. E. 898); *Robinson* v. *State,* 129 *Ga.* 336 (58 S. E. 842); *Fox* v. *Fox,* 172 *Ga.* 779 (158 S. E. 796); *Braswell* v. *Brown,* 112 *Ga.* 740 (38 S. E. 51); *Hancock* v. *McNatt,* 116 *Ga.* 297 (42 S. E. 525); *Colquitt* v. *Solomon,* 61 *Ga.* 492; *Sovereign Camp Woodmen of the World* v. *Bell,* 42 *Ga. App.* 323 (156 S. E. 235); *Tomlinson* v. *Cox,* 8 *Ga.* 111; *Stubbs* v. *Central Bank,* 7 *Ga.* 258. The facts do not bring the case within any exception to the rule stated, as where an instrument has been already "copied as an exhibit or set out *in the pleadings,*" and is thus already a part of the record specified to be sent to the appellate court, in which event, under the Code, § 70-305, it need not be more than merely referred to in the brief of evidence (see *Allen* v. *Young,* 62 *Ga.* 617; *Patterson* v. *Collier,* 77 *Ga.* 292, 296, 3 S. E. 119; *Blow* v. *White,* 41 *Ga.* 293; *Carey* v. *Giles,* 10 *Ga.* 1; *Slappey* v.

*Charles,* 7 *Ga. App.* 796 (3), 68 S. E. 308); or where an exhibit has been approved or identified by the judge as forming a part of the record, and is referred to in the approved bill of exceptions as part of the record to be sent up to the appellate court. See *Norman* v. *Smith,* 131 *Ga.* 69 (3), 71 (61 S. E. 1039). Accordingly, the first, third, and fourth special grounds of the motion for new trial, which would require a reference to the alleged "Exhibits A" and "B," can not be determined. Moreover, even if the contents of both or either of such alleged exhibits could properly be considered, these grounds are without merit.

■ A ground of the motion for new trial excepts to oral testimony by a witness as to the contents of a schedule, the alleged "Exhibit B," because "the witness stated that it was figures that he had copied from the original, and therefore secondary evidence, the original schedule being the highest and best evidence." While the copy of the original schedule, comprising "Exhibit B," is not contained in the record, it appears from the record that it was attached to the depositions of this witness. There is no exception to the admission in evidence of such copy schedule. Irrespective of the admissibility of the copy as secondary evidence, since it was admitted without objection and was before the jury, the admission of the mere statement by the witness who made the copy, as to some of its contents, could not have been prejudicial to the defendants. See *Hammack* v. *Davis,* 49 *Ga. App.* 192 (3) (174 S. E. 725).

■ Another exception is to the court's failure to give in charge to the jury without written request, the following: "When parties have reduced to writing what appears to be a complete and certain agreement, it will, in the absence of fraud, accident, or mistake, be conclusively presumed that the writing contains the entire contract, and parol evidence of prior or contemporaneous representations is inadmissible to add to, take away, or vary the written instrument." This exception is on the ground that the bill of sale, comprising the alleged "Exhibit A," "contained all the representations made by the defendants to the plaintiffs." This document contained the following description of the properties sold: "one certain turpentine *plant and business,*" as described, *"and all the assets and properties used in connection therewith, including, without intending to limit the generality of the above description, the following"* personal properties mentioned. Under

the italicized language, any asset or property which parol testimony showed was "used in connection with" the "turpentine plant and business" was included in the sale, and parol testimony as to representations relating to any such asset or property was not excluded by the terms of the instrument. Therefore a charge that the writing "contained all the representations made by the defendants to the plaintiffs" would have been unadjusted to the evidence, and erroneous. For the same reason, it was not error to refuse the request to charge as contained in the fourth ground, since such request contained, among other legal principles, a similar instruction.

■ The second ground shows no prejudicial error in the admission of testimony by a witness as to the number of turpentine boxes received by the plaintiff vendors, which was introduced for the purpose of proving the alleged shortage, and to which exception was taken on the ground that the evidence showed that the witness had merely compiled his data from figures written down and tallied by other persons from numbers orally stated to them by the persons actually counting the boxes. Irrespective of the legal admissibility of this testimony, its admission could not have injured the defendants, since similar testimony by the same witness, with an additional statement of the total numbers of boxes so counted and compiled, to the admission of which there was no exception, appears elsewhere in the record.

*Judgment affirmed. Stephens and Sutton, JJ., concur.*

ON MOTION FOR REHEARING.

JENKINS, P. J. Under the general grounds of the motion for new trial the defendants especially urge, in their motion for rehearing, that this court failed to consider the absence of evidence in the record to prove the $420 damages recovered, or any of the special damages claimed. They contend, that, even if the proof showed a deficiency between the number of pine-tree boxes represented and contracted for and the number delivered, there was nothing to show what amount of turpentine or crude gum the shortage would have produced or its value. In view of this contention, a brief reference to another item of damage claimed, and supporting testimony, on which the conclusion in the original decision was based that the verdict was authorized, is now made. It is true that if the petition had sought merely to recover for the shortage in the turpentine boxes, evidence as to their value was lacking.

But it was further alleged that the defendants agreed with the plaintiffs that if the defendants were allowed to remain in physical possession of the boxes and other properties after the date of the bill of sale, November 8, until November 16, 1929, they would operate the turpentine plant and the crude gum in the trees only in their usual and normal manner, not exceeding ten or fifteen units at most; but that they used and manufactured crude gum in excess of this normal and usual amount and method, so as to increase the production to twenty-nine units, whereby the plaintiffs lost the ownership and value of not less than fourteen units of spirits of turpentine and rosin, amounting to not less than $840. Although the testimony was in conflict as to whether this alleged agreement was made and as to whether it was violated, there was some evidence to support the averments of the petition as to the alleged undertaking, and as to an actual double increase of the plant's operation by extra running at night as well as in the daytime. As to the amount of damages for double use, J. E. Dupree testified: "A charge is the number of barrels of crude gum that can be manufactured at one cooking. This particular still had a capacity of eight barrels of crude gum to the cooking. You could put out three charges with that still per day with ordinary operation; and if it was operated at night, you could put out that many more. If you operated the still twenty-four hours per day, you could put out six charges. Six charges would amount to around ten barrels of spirits." One of the plaintiff partners testified: "On November 16, 1929, a unit of turpentine was worth $60. A unit of turpentine is a barrel of turpentine spirits and 3-1/3 barrels of rosin." Under the testimony of the first-mentioned witness, the alleged excess operations during the eight days in question would have amounted to an excess of 5 barrels of spirits, included in 24 barrels of crude gum, each day, a total for the 8 days of 40 barrels of spirits, included in 192 barrels of crude gum. According to the testimony of the last-mentioned witness, a unit of turpentine, consisting of one barrel of turpentine and 3-1/3 barrels of rosin, was worth $60 at the time in question. A total excess of 40 barrels of spirits would have been accompanied by the proportionate excess of rosin as stated; so that there would have been 40 units of the two. The value of this excess, as testified, being $60 a unit, would have amounted to $2400.

While this court is without knowledge as to the operation of the naval-stores business, and it was the function solely of the jury to weigh and consider the testimony of the witnesses as to such operation and the value of the alleged excess of naval stores manufactured by the defendants, the evidence stated manifestly supplied to the jury sufficient legal data from which they were authorized to find, as they did, in favor of the plaintiffs, and apparently they could have rendered a verdict in a much larger amount.

*Rehearing denied.*