31974. SHACKELFORD *v.* THE STATE.

DECIDED MAY 6, 1948.

*M. G. Hicks,* for plaintiff in error.

*E. J. Clower, Solicitor-General,* contra.

TOWNSEND, J. (After stating the foregoing facts. ■ Counsel for the State in his brief insists that the bill of exceptions should be dismissed under the authority of *Warnell* v. *Ponder,* 54 *Ga. App.* 1, 2 (187 S. E. 261). Since the bill of exceptions recites that the evidence omitted is material to a clear understanding of the errors complained of, and since indeed the same is material, its omission from the record does *authorize* this court to dismiss the bill of exceptions under the authority of *Warnell* v. *Ponder,* supra, and the cases therein cited. However, to hold that this authority *requires* this court to dismiss the bill of exceptions would in effect nullify Code §§ 6-812 and 6-1403. It is the policy of this court to hear and determine cases brought to it on merit where the same can consistently be done. Here, by employing the authority vested in this court under the Code

sections referred to above, the necessity for the dismissal of the bill of exceptions is obviated. On motion to dismiss the bill of exceptions because the transcript of the record is incomplete in a material point, this court is not bound to grant the motion, but may by appropriate order have the deficient parts of the record subsequently supplied. See Code, §§ 6-812 and 6-1403.

Counsel for the State relies on a number of other cases in support of his motion to dismiss the bill of exceptions, none of which requires this court to grant the motion.

■ The motion for new trial being on the general grounds only, the sole question to be determined is whether or not there is evidence that the defendant obtained from A. G. Bishop the sum of money alleged in the indictment, by color of any counterfeit letter or writing made in any other person's name or fictitious name. The charge contained in the indictment is set forth in the statement of facts herein. Section 26-3918 of the Code, upon which this indictment is based, provides as follows: "Any person who shall designedly, by color of any counterfeit letter or writing, made in any other person's name, or fictitious name, obtain from any person money or other valuable thing, with intent to defraud any person, mercantile house, body corporate, or company of the same, shall be punished by imprisonment and labor in the penitentiary for not less than two nor more than seven years."

There is ample evidence in the record to authorize the jury to have found that the defendant and one T. H. York were engaged in a conspiracy to obtain money under false pretenses in and around Rome and that as a result of this conspiracy they did fraudulently procure from A. G. Bishop, the person alleged in the indictment, the sum of $50. Also that the defendant at the time had in his possession a counterfeit letter such as was alleged in the indictment. However, in order to convict the defendant there must be some evidence that the money he obtained from Bishop was by color of the counterfeit letter or writing. Although the record contains the testimony of many witnesses we must depend largely upon the testimony of Mr. Bishop for evidence in support of this particular issue, because Mr. Bishop, and he only, could know what moved him to part with his money and pay it over to

the defendant and his associate. Of course the other evidence in the record is considered in determining this issue.

Mr. Bishop testified in substance that a person giving his name as Dan K. Shackelford called him over the telephone and explained an advertising plan to him; that in the course of this telephone conversation he entered into a contract with the defendant by the terms of which his business was to be advertised on Southern Railway property by printed posters which were to be put up on the property of the Southern Railway Company around July 1 and remain up for one year; that for this advertising service he was to pay the sum of $50; that one T. H. York was to call by his place of business, show him the type of poster that was to be put up and collect for the same; that several days later York came by, displayed the sample poster and exhibited the letter alleged in the bill of indictment as the counterfeit letter by color of which the sum of $50 was alleged to have been obtained from Bishop; that he did not take the letter in his hands; that he did not know what was in it; that he did not read any of it; that at the time York displayed the letter he stated: "You see all the firms that we have got throughout Alabama," and said also, "This is the first time the Southern has ever given us permission to hang these in waiting rooms." At the time, the witness was referring to a part of the State's exhibit 3 which is the letter alleged to be counterfeit and by color of which the defendant is charged with having obtained the money in question from Mr. Bishop. This letter contains the names of several hundred persons indicated as employees of railroad companies throughout the United States. There is no documentary evidence in the record purporting to be a list of firms subscribing to this advertising plan throughout the State of Alabama; and since the witness testified that he did not take the letter in his hand, that he did not read it, and that he did not know what was in it, the inference is as strong that a list of purported firms in Alabama represented as subscribers to this advertising plan was submitted to the witness, as is the inference that the letter with the list of alleged railroad employees attached to it was displayed to him. Be that as it may, the witness further testified in substance that before York came by to see him he had already told Shackelford over the phone that he would purchase the advertising; that

before York displayed the letter he had previously entered into a contract with the defendant over the telephone, and that York came by to pick up the check, deliver the receipt and showed him the State's exhibit 3; that the defendant said nothing about the counterfeit letter (State's exhibit 3) over the telephone; that he relied on what Shackelford told him over the telephone and entered into the contract for the advertising.

The conspiracy between the defendant and York was sufficiently established to charge the defendant with the conduct and statements of York. Notwithstanding this, however, the testimony of Bishop is insufficient to show that the defendant obtained the check from him by color of the counterfeit letter or writing. On the contrary his testimony affirmatively shows that the check was obtained from Bishop by the defendant and York without employing the use of the counterfeit letter.

The whole evidence including the written statement of the defendant introduced in evidence as State's exhibit 8 failed to show that the defendant obtained this money by color of the counterfeit letter or writing. Counsel for the State relies in his brief on *Sims* v. *State,* 40 *Ga. App.* 10 (148 S. E. 769), and insists that therein evidence of a similar nature to that introduced in the instant case was sufficient to support the verdict. In that case the evidence showed that the money was procured from a bank on a check made payable to the defendant and signed in a fictitious name. There the writing upon which the State relied by the color of which the money was obtained was presented to the bank for payment. Here the writing, if exhibited to the victim at all, was pointed out to him as a list of firms in Alabama subscribing to the advertising plan, and this was done after the victim had already entered into the contract, he in effect testifying that the writing did not influence him to part with his money.

The verdict is without evidence to support it, and the trial judge erred in overruling the motion for a new trial.

*Judgment reversed. MacIntyre, P. J., and Gardner, J., concur.*