## 1666.   LOEB v. THE STATE.

1. There are no accessories in misdemeanors. All who procure, counsel, command, aid, or abet the commission of a misdemeanor are regarded by the law as principal offenders, and may be indicted as such. The indictment may be joint against all those connected with the criminal enterprise, or it may be several against any one of them.

(a) Whether the indictment is joint or several, any particular defendant accused therein of having committed the misdemeanor may be convicted by proof either that he directly and personally enacted the criminal transaction, or that he procured, counseled, commanded, aided, or abetted the criminal transaction of another, who was the direct and immediate actor.

2. An assignment of error upon the court's refusal to allow counsel to ask of a witness a question is not in form unless it shows that the judge was informed at the time of the ruling of the nature of the answer anticipated.

3. Written requests to charge may be refused, where they have been fully covered by the general charge, or where they are not pertinent to the case, or where they are not wholly correct in stating the law.

4. The defendant was indicted for the illegal sale of liquor. There was no proof that he himself had made any sales in the county of the prosecution, but there was testimony from which the jury was authorized to find that he had hired another person to sell for him in that county; also that he had sold to another person liquors knowing that the latter was buying them for the purpose of illegal resale, and that he (the defendant) had otherwise aided and abetted this person in running a place of business where liquors were illegally sold in that county. *Held,* that the defendant was properly convicted.

5. The defendant was fairly tried and legally convicted.

Petition for certiorari, from Morgan superior court—Judge Lewis. January 7, 1909.

Argued February 23,—Decided April 15, 1909.

Loeb was indicted by the grand jury of Morgan county for a violation of the local-option liquor law which was in effect in that county in the year 1906. The case was transferred to the county court for trial, and was heard before Hon. Samuel H. Sibley, judge of the county court of Greene county, presiding on account of the disqualification of the local judge. The indictment charged that the defendant "did sell and barter, for valuable consideration, alcoholic, spirituous, malt, and intoxicating liquors and intoxicating bitters and other drinks which, if drunk to excess, will produce intoxication." The defendant was convicted, and he applied for a certiorari. The judge of the superior court refused to sanction the petition; and to this ruling the defendant brings error.

The testimony of the State was to the effect that Loeb, who was general manager of an incorporated liquor business, carried on in Atlanta under the name of the Lomax Distilling Company (the only persons connected with the business being himself, one Teitlebaum, who performed the services of a bookkeeper, and certain porters and other menial employees) went to the house of a negro named Martin Wyatt, residing in the lower portion of Morgan county, and employed him to sell liquor in that county. According to Wyatt, who was sworn as a witness, the exact language used by Loeb was "I want to get you to sell some liquor." Wyatt had never met Loeb before, and suggested to him that the sale of liquor was against the law. Loeb replied, that he would fix that so Wyatt would not be hurt; that he would get a license which would protect him; and Wyatt consented to sell the liquor. A few days later the negro received a barrel of whisky, a cask of cased whisky, and also a case of rye liquor. With this he set up a bar in his home and began regularly the business of selling liquor. Loeb promised to make it right with the negro as to what he should receive as compensation, promising, among other things, to get him a suit of clothes, and told him to send the money to him in Atlanta. During the short while the business was carried on, several hundred dollars worth of liquor was shipped out to the negro. It was sent to him, not at Rutledge, which was his nearest railroad station, but

to Covington or Social Circle, points considerably distant from his home. The proceeds from the sale of this liquor, with the exception of about $130 which was on the defendant's person when he was arrested, were either sent or carried to Loeb in Atlanta. Prosecutions were instituted against the negro, and when he was arrested he asked the officers to notify Loeb. Loeb came and got the unsold portions of the liquors which still remained at the negro's house. Loeb procured and sent to the negro, about the time the first shipment of liquor was sent him, a United States internal revenue license. This liquor was shipped out in the name of the Lomax Distilling Company. The negro on one or more occasions had gone to the place of business of the Lomax Distilling Company at Atlanta and left instructions as to what liquors were to be sent out, and also had made payments of money there.. The defendant denied that he was in any wise responsible for the sales made by the negro. He set up, that the only transactions he had with the negro were that he, from time to time, as agent of the Lomax Distilling Company, sold him liquor; the sales being made in Atlanta, where at that time it was lawful to sell it; that his trips to the negro's home in Morgan county were for the purpose of collecting money from him, and that when the negro was arrested he seized the remainder of the stock .on hand merely to protect his house for the unpaid balance of the purchase-price; that the negro was in no sense his agent; that he was not instrumental in procuring him to sell liquor.

Teitlebaum, the bookkeeper of the Lomax Distilling Company, testified, for the defense, that the negro, Martin Wyatt, came to Atlanta and stated that he wanted to buy some liquor, and that he (Teitlebaum) told him that he would have to wait and see Mr. Loeb; that the negro arranged with Loeb to buy a certain amount of whisky, and paid $30 in advance on it; and that afterwards, from time to time, the negro ordered whisky from the Lomax Distilling Company as any other customer would have done. He denied that Loeb or the Lomax Distilling Company procured a Federal license for the negro, but admitted that he knew Loeb furnished the negro money with which to pay for the license; stating, at one place in his testimony, that the license was mailed to the negro, and in another that the negro went to the office of the internal revenue collector and procured the license. The cash advanced to

him for this purpose was charged to him on the books of the Lomax Distilling Company. The negro testified that Loeb furnished not only the liquor, but also the drinking glasses and the other paraphernalia with which the business was carried on; but Loeb denied this. The testimony of the negro, as to his original conversation with Loeb and as to several other material facts in the case, was corroborated by the testimony of a negro woman who lived at his (Wyatt's) house. There was also testimony as to an admission by Loeb that he had bought and sent the revenue license to Wyatt for the reason that if the revenue officer should inspect his books and see the amount of whisky that Wyatt was handling, it would get him into trouble. The defense introduced testimony tending to impeach Wyatt by proof of his general bad character; and the State introduced proof in reply, showing his good character and worthiness to be believed on oath. Further facts necessary to an understanding of the points presented will be stated in the opinion.

E. H. George, Middlebrooks, Rogers & Knox, for plaintiff in error.

J. E. Pottle, solicitor-general, A. G. Foster, contra.

POWELL, J. (After stating the foregoing facts.)

When the negro, Martin Wyatt, was about to testify for the State that the defendant had employed him to sell whisky, beer, etc., and that he, in pursuance of this arrangement, had sold the liquors for the defendant, the defendant's counsel objected to the testimony, on the ground that the indictment alleged that the defendant himself sold the liquors personally, and did not allege that he sold them by an agent or employee,—that to prove a sale through an agent or employee would show a fatal variance from the manner in which the offense is charged in the indictment. The court overruled the objection, and in the petition for certiorari this is made a ground of error. In the argument counsel has strenuously stressed upon us the proposition that an indictment should set forth the offense with such particularity that the defendant will be informed with reasonable certainty of the nature of the charge against him, and will be protected from surprise brought about by the fact that the State on the trial will offer testimony to convict him by proof of a transaction not naturally indicated by the language of the indictment; that a defendant charged directly with the sale of liquor would hardly expect the State to attempt to make out this

crime by proving that some other person made the actual sale, while he (the defendant), though many hundreds of miles away, procured, counseled, commanded, aided, or abetted it to be done. The insistence, however, is not a new one; it has been presented to the courts before a number of times, and, despite its plausibility and its apparent reasonableness, has been almost uniformly rejected. In the case of *Kinnebrew* v. *State*, 80 *Ga.* 236 (5 S. E. 56), in which the defendant was charged with the illegal sale of liquor, and the proof was that the sale was made by his clerk in his absence, the same proposition now asserted by the plaintiff in error was contended for, and Chief Justice Bleckley, speaking for the court,. said: "The reply we make to the learned historical argument with which the able counsel for the plaintiff in error favored us is, that had we been here 'in the beginning,' and had he been here to make it, we should probably have yielded to it; but a contrary construction has so long prevailed, and so many hundreds, if not thousands of cases, have in the superior court practice been rested upon it, nothing but the clearest light of truth would now justify a repudiation of the common-law rule." In the case of *Hately* v. *State*, 15 *Ga.* 346, it was held: "He who procures, counsels, commands, or incites his clerk or agent to commit a crime, in his absence, is guilty as an accessory before the fact, and can not be convicted on an indictment which charges him with having jointly with his clerk committed the offense, as principal." In the *Kinnebrew* case, supra, this holding is declared to be obiter and unsound, and it is held that the common-law rule that there are no accessories in misdemeanors, but all are principals, is still of force in Georgia, and that the defendant may be convicted of a misdemeanor, under an indictment charging him with committing the act,—committing it as principal,—though the proof shows that he did not personally commit it, but was connected with it in some relationship which would make him an accessory if the offense had been a felony. This rule has been applied in a large number of cases. See *Mims* v. *State*, 88 *Ga.* 458 (14 S. E. 712) ; *Palmer* v. *State*, 91 *Ga.* 152 (16 S. E. 937) ; *Forrester* v. *State*, 63 *Ga.* 350; *Rooney* v. *Augusta*, 117 *Ga.* 709 (45 S. E. 72) ; *Statham* v. *State*, 84 *Ga.* 25 (10 S. E. 493) ; *Kessler* v. *State*, 119 *Ga.* 301 (46 S. E. 408). Hardship may sometimes come from the operation of this rule; it is never- theless the law. We may say in passing, however, that the trial

judges can largely guard against injustice being done under the operation of the rule; and we have no doubt that if, on the trial of a case, it should appear that the defendant had honestly and earnestly attempted to inform himself of the particular transaction for which he was being prosecuted, and the State's counsel had declined to let him know specifically what transaction he would be called upon to defend, and that the defendant was really taken by surprise at the nature of the testimony introduced against him, the judge would, by some means—postponing the trial, continuing the case, or otherwise—give him an opportunity to get his proof. In the present case there is not the slightest suggestion that the defendant did not know what transaction he would be called upon to defend. Indeed, it is candidly admitted that he did know.

2.  There is also an assignment of error complaining that the court sustained an objection to a question asked by the defendant's counsel of a witness for the State. Since the question on its face does not appear to have related to a matter relevant to the investigation, and since the court was not informed at the time of what testimony counsel expected to elicit in answer to the question, according to repeated rulings of this court and of the Supreme Court, the exception is not meritorious.

3.  Exception is taken to the refusal of the court to give to the jury a number of instructions duly requested in writing. We have examined all of these requests and have compared them with the full charge of the court, which is also contained in the record. In our opinion they do not require discussion at length, but may be disposed of by the general statement that they are not meritorious, for one or the other of two reasons,—either that the judge fairly and fully covered them in the general charge, or else that they were not sound as propositions of law applicable to the case.

4.  Exception is taken to the following charge of the court to the jury: "If you find, under the evidence in the case, that illegal sales of liquor were made in Morgan county by some other person than the defendant, but that the defendant did knowingly aid and abet these sales, or that, being absent at the time they were made, he did yet procure, counsel or command another to make them, he would be held responsible as a principal, and would be guilty under this presentment for selling liquor in Morgan county." We think that this was a pertinent, apposite

charge, stating the law applicable to the case under investigation. There was no evidence that Loeb himself personally sold liquor in Morgan county; but it was not necessary that this should be shown, in order for the defendant to have been lawfully convicted. If the jury believed the testimony of the negro, Martin Wyatt, that Loeb hired him to run the business and to sell the liquor as a mere employee, the defendant should have been found guilty on the theory that he procured or commanded the sale. If Loeb induced Wyatt to sell liquor illegally, whether as his agent or on his own account, he was guilty on the theory that he counseled the crime. More than this, if he knew that the negro was engaged in selling liquor illegally in Morgan county, and nevertheless gave him, loaned him, sold him, or otherwise furnished him liquor, or glasses, or other paraphernalia with which to carry on the business (and a substantial portion of this is practically admitted by the defendant's own testimony), he was guilty on the theory that he aided and abetted the crime. Indeed, we can accept the contention of the defendant that the negro Wyatt, the State's chief witness, is the veriest liar in all the land, and yet the conclusion that the defendant is guilty is almost irresistible. Loeb, seeing and knowing of the large amount of liquor that this negro was buying and having shipped to him, seeing and knowing that he had procured a Federal license as a retail liquor dealer in the county of Morgan, naturally knew therefrom, as a man of ordinary intelligence, that the negro was violating the law,— that he was engaged in the illegal sale of liquor. And one who knowingly furnishes the proprietor of a "blind tiger," or other place where liquors are illegally sold, the liquors with which to run that business, whether such furnishing be by sale, gift, or in any other manner, bears, to the illegal act of the proprietor of the place, a relationship which, if the offense were a felony, would make him an accomplice, and which, since the offense is a misdemeanor, makes him a principal. The fact that the defendant acted as the agent of the Lomax Distilling Company made no difference. The law does not look to the civil relations existing between the parties, in determining criminal responsibility in such cases. The defendant had no larger immunity from criminal responsibility for aiding and abetting Wyatt's act, by reason of the fact that he did the acts of aiding and abetting as the agent

of a corporation, than he would have had if he had done so on his own behalf. All who knowingly participate in criminal transactions are, in misdemeanor cases, equally guilty, whether they participate as chief or principal actor, or as a mere accessory in the broader sense of the word,—whether on their own behalf or as agent or employee of another. The aiding and abetting is what counts. "Aid" is a plain, homely word, with a meaning well and generally understood. "Abet" smacks more of technical terminology, but it is almost synonymous with "aid." The two words together "comprehend all assistance given by acts, words, or encouragement, or by presence actual or constructive." Raiford *v.* State, 59 Ala. 106, 108. "The word 'abet' includes knowledge of the wrongful purpose of the perpetrator, and counsel and encouragement in the crime." People *v.* Dale, 122 Cal. 486 (55 Pac. 581, 68 Am. St. Rep. 50). As Judge Sibley so succinctly expressed it in his charge to the jury: "The law in criminal cases does not take accurate note of the civil relations of principal and agent; many of the principles relative to that relationship which are applied in civil transactions do not apply in criminal matters; for instance, it would not be a defense for a man, in doing any act for which he would be criminally responsible, that he did it simply as the employee or representative of some other person, if at the time he was of sound mind, and of an age capable of committing a crime, and acting under no compulsion or coercion. In this case it would not be a defense that the defendant was simply acting as the representative or employee of some other person. The law does not undertake to weigh nicely and precisely a civil relation that may be shown to exist between the defendant and that other person, but puts it under the rule of law I have just stated." It is wholly immaterial whether Wyatt was Loeb's agent, or whether Wyatt was the principal and Loeb merely knowingly assisted him. We recall what Judge Bleckley said in *Forrester's* case, 63 *Ga.* 350, where the defendant declined to sell liquor himself, but allowed his negro servant, Mary, to sell it in his kitchen: "In the defendant's kitchen, by his servant, in his presence, and with his co-operation through the responses, 'Go to Mary' and 'Give the money to Mary,' the traffic was carried on. There is little doubt that the defendant is the deity of this rude shrine, and that Mary was only the ministering priestess. But

if she was the divinity, and he her attending spirit to warn thirsty devotees where to drink, and at whose feet to lay their tribute, he is amenable to the State as the promoter of forbidden libations. Whether in these usurped rights he was serving Mary or Mary him, may make a difference with gods and goddesses, but makes none with men."

5. There are a number of assignments of error in addition to those which we have discussed in terms. We do not deem it profitable to set them out in extenso. None of them raise points that would be especially valuable as precedents. We have given them all careful consideration. None of them present any reversible error. The defendant was fairly tried and legally convicted.

*Judgment affirmed. Russell, J., concurs specially.*