26832. DANIELS *v.* THE STATE.

600

Decided November 2, 1938.

*E. W. Maynard,* for plaintiff in error.

*Charles H. Garrett, solicitor-general,* contra.

MacIntyre, J. The defendant, Fred Daniels, was jointly indicted with Pee Wee Burns and Charlie Thompson for the robbery of Pete Modena. It was alleged that on July 17, 1936, they took by force "one lady's diamond ring, one man's diamond ring, one 38-caliber Smith & Wesson pearl-handle pistol, one stick-pin with diamond and green emerald, one flash light, two baby pins on chain, one baby ring, one kodak, 205 cases of assorted whisky, and $257 in lawful U. S. currency, of the value of $3659.25."

The evidence for the State tended to show that a man named B. H. O'Conner, alias Hugh Gibson, and one named L. M. Wilson, alias Ned Welch, had been released from the Federal penitentiary a short while before the commission of the robbery complained of. They had both been out of the State for several weeks, and they met in Atlanta on Sunday, July 12, 1936, for the purpose of going to work for a night club in the environs of Atlanta. On the following Wednesday, O'Conner struck up with Charlie Thompson, who was an old acquaintance, and that night Thompson brought Pee Wee Burns up to the room in the Georgian Terrace Hotel which was occupied by O'Conner and Wilson. There the four agreed that Thompson, O'Conner, and Wilson would come to Macon the next day and look over the approaches to the residence of Pete Modena, and that on the following night they would all come to Macon and go to Modena's residence with a truck and rob him of his money and his whisky, the agreement contemplating that O'Conner and Wilson were to receive $900 in cash from Burns and one third of the money taken from Modena. The next day Wilson went out and provided himself with two pairs of handcuffs, a large roll of two-inch adhesive tape, and a roll of flexible picture wire for the purpose of binding and blinding the Modena family, and Thomp-

son, Wilson, and O'Conner came to Macon and looked the situation over and went back to Atlanta. That night they met near the Federal penitentiary in Atlanta and Burns informed them that his truck had gone on ahead. They overtook the truck about twelve miles out of Atlanta, and Fred Daniels, the defendant, was driving it. He was spoken of in the evidence, without objection, as being the "yes man" for Burns. Omitting the details of the robbery, it is sufficient to say that Burns and Wilson, according to the evidence, perpetrated the actual robbery, while O'Conner, Daniels, and Thompson waited on the outside. It is important probably to call attention to the evidence to the effect that they did not drive the truck directly to Modena's house, but Daniels parked the truck at the municipal stadium, about a block away, all five of the men got in a car and rode up and down the street for an hour or two in the neighborhood of Modena's house, waiting for the lights to go out at the Modenas' house and in the homes of his neighbors. Gibson, a co-conspirator and a witness for the State, in part testified that "After we got here me and Wilson and Burns and Thompson and Daniels were riding around looking the situation over, and I don't think Daniels knew he was coming here to hijack any whisky up to that time, Daniels was present when Burns and all of us were discussing how we were going to handle the Modenas. Daniels heard the discussion. When we got ready for the truck to come up to Modena's house I motioned to Daniels and he drove the truck up to Modena's house and backed it in there and he stayed in the truck and loaded the whisky. Daniels drove the truck in Modena's back yard and turned around and backed the truck up to the house. I don't think Daniels knew the jewelry was taken. I knew it." The wife of Modena testified "Mr. Thompson knew we had Walker's 93 liquor in the pantry on the back porch. That was a popular brand of whisky at that time."

■ Special grounds 1 and 2. When the case was called the defendant made a motion to continue the case until another array of jurors could be impaneled on the ground that "this jury to be put upon the defendant" on yesterday heard the verdict of "guilty" read against Charlie Thompson who was jointly indicted with him. The defendant's counsel stated that he only asked the court to continue the case until next week in the hope that a new panel of jurors might be placed upon him, and was not trying to delay unneces-

sarily the trial of the case. The solicitor-general stated "that some of the jurors may have heard the verdict read in court but they have not heard any of the evidence. There may have been four or five jurors in court when the verdict was read." The defendant contends that the failure to continue the case was prejudicial error which required the granting of a new trial. We can not say that the trial judge abused his discretion in refusing to continue the case. *Schnell* v. *State,* 92 *Ga.* 459 (17 S. E. 966) ; *Paulk* v. *State,* 2 *Ga. App.* 662 (2) (58 S. E. 1109). When this motion was overruled, a formal challenge to the array was filed on the same ground. This contention of the defendant is without merit and is controlled by the case of *Thompson* v. *State,* 109 *Ga.* 272 (2) (34 S. E. 579), wherein it is said, "A challenge to the array is an objection to all of the jurors collectively, because of some defect in the panel as a whole. If for any reason the impartiality of any one or more of the jurors whose names appear on the panel is suspected, the proper method of determining the state of feeling of such juror or jurors is by a challenge to the polls, and when thus challenged they may be put on their voir dire. And this is the rule not only in the trial of criminal cases where the charge amounts to a felony, but in the trial of misdemeanors as well."

■ Special grounds 3, 6, and 7. These grounds raise the question as to whether the State, in establishing a conspiracy to rob, in which Thompson was one of the conspirators, could prove that Thompson, sometime prior to the robbery, had been buying a special brand of whisky known as "93" from the witness, Modena. It appeared in evidence, which was admitted without objection, that during the progress of the robbery Modena heard Thompson's voice call out to his fellow robbers on the inside to be sure to get the key to the pantry as that was the place where the "93" was kept. The court told the jury, "Don't consider, gentlemen of the jury, the question of the solicitor or the answer of the witness that he sold Thompson any liquor. You can not ask any question involving the character of Thompson. You can not bring evidence into this case that involves the character of Thompson. If you can show Thompson was a conspirator in this case you can do so." The fact that Thompson had bought this brand of liquor from Modena was admissible to show that he, Thompson, had previous information of where this brand of liquor, which was stolen, was kept, and

was conveying that information to his co-conspirators at the very time the robbery was being perpetrated, thus tending to show that Thompson was acting as a co-conspirator in pursuance of a concerted plan with reference to the crime charged. While the acts of each conspirator emanate from him individually, they are a part of a common purpose or design, so that evidence of such acts is relevant although each component act may constitute an independent offense. *Nelson* v. *State,* 51 *Ga. App.* 207, 212 (180 S. E. 16). The true question is whether the evidence is relevant to the issue on trial, and shows some logical connection, and reveals knowledge, design, or plan, and if it shows this, it is not excluded merely because the act sought to be introduced in evidence happens to be punishable under our laws as a crime. *Barnes* v. *State,* 57 *Ga. App.* 183 (194 S. E. 839); *Bates* v. *State,* 18 *Ga. App.* 718 (90 S. E. 481); Underhill's Criminal Evidence (3d ed.), 203, § 154.

■ Special grounds 4 and 5. The solicitor was making his opening statement to the jury and stated that he expected to prove that a sister of one of the witnesses for the State named Hugh Gibson, an ex-convict, who had pleaded guilty in the case, went to Atlanta and had certain transactions with Burns, Thompson, and Daniels, and stated that this witness was a married woman of good character. Thereupon the following occurred: Mr. Maynard: "I move for a mistrial because the solicitor is testifying to the character of one of the witnesses, which is highly prejudicial and inadmissible. He is testifying for a woman who lives outside the State of Georgia whom he don't know anything about." The court: "I will leave before the jury the statement of the solicitor she is a married woman. That is as far as I will let him go." Mr. Garrett: "I am prepared to defend her character." Mr. Maynard: "I move for a mistrial on that statement, he is testifying for her." The court: "I will deny the motion. Of course you will understand, gentlemen of the jury, what the solicitor says is not evidence, and unless he adduces evidence of what he says he is going to prove you won't consider it at all." It does not appear that the remarks of the solicitor-general were otherwise than in good faith. The case was one where the prosecutor was a self-confessed bootlegger, and his wife admitted that she co-operated with him in the sale of liquor, and two of the witnesses for the State were ex-con-

victs who might be termed "jailbirds," and the sister of one of them, the witness under discussion, testified to material facts, and her character was not attacked. We presume that the remarks of the solicitor were leading up to an outline of the witness's testimony, and his statement to the jury was in effect that while certain testimony came from criminals and jailbirds, the State expected to prove certain material facts by the witness herein referred to, a married woman, who did not belong to these classes of persons, and when the court said "I will leave before the jury the statement of the solicitor she is a married woman. That is as far as I will let him go," the court thus in effect ruled out the solicitor's statement as to the good character of the witness, and when the solicitor replied, "I am prepared to defend her character," this remark to the court might have been construed to mean "I am prepared to defend her character if the occasion arises," and that the solicitor was not testifying himself but was prepared to introduce evidence to defend her character in the legal way if attacked. The word defend would indicate a preceding attack. Generally one must be attacked before he can defend, otherwise he might be considered the attacker rather than the defender. Bearing in mind that the judge instructed the jury that "what the solicitor-general says is not evidence, and unless he produces evidence of what he says he is going to prove you won't consider it at all," and that subsequently, during the introduction of evidence, no evidence was tendered to attack or support the good character of the witness, we can not hold that the judge of the trial court committed reversible error in holding that the solicitor-general's conduct in his opening statement to the jury was of such a character as would require the grant of a mistrial. Good faith is the general test in passing upon the preliminary statement of the solicitor-general to the jury as to what he expects to prove in a criminal case. *Sterling* v. *State*, 89 *Ga.* 807 (15 S. E. 743); Nelson *v.* State, 139 Ark. 13 (212 S. W. 93); *Herring* v. *State*, 10 *Ga. App.* 88 (2) (72 S. E. 600); People *v.* Bundy, 295 Ill. 322 (129 N. E. 189).

■ Special grounds 8, 9, 10, 11, 12, 17, 23, 24, and 26. The defendant contends in these grounds, in effect, that the evidence objected to does not show that he was connected with the conspiracy to rob, or that he was ever connected with it, and if he was

ever connected with it he was not connected with it at the time referred to in the testimony. If connected with it at all, it was subsequent to the acts and declarations complained of in these grounds. The evidence clearly shows that on July 15, 1936, a conspiracy was entered into to rob, and that on the next night he (the defendant) drove the truck that carried away the property stolen. The fact that the defendant did not enter into the conspiracy on the first night that it was formed, but only joined in it the second night after its existence, the night of the robbery itself, does not make the acts and declarations of his co-conspirators, after the conspiracy was formed, inadmissible as to him. While the acts of each conspirator emanate from him individually, they are a part of a common purpose or design, so that the evidence of such acts is relevant after the conspiracy has been proved, and all acts done by any of the parties, before or after, in furtherance of the common design, to wit, robbery, are relevant. Stewart v. State, 26 Ala. 44; Gore v. State, 162 Ga. 267, 271 (134 S. E. 36). Relevancy is not affected by the particular time that the defendant joined in the conspiracy. 2 Wharton's Crim. Ev. 1731, § 919 (6). It has been stated that "this rule, which is generally applicable to the offense of conspiracy, is grounded upon the reason, that by the act of conspiring together, the conspirators have jointly assumed to themselves as a body the attributes of individuality, so far as regards the prosecution of the common design, thus making the act of each a part of the res gestæ and the act of all." Stewart v. State, 26 Ala. 44, 47. "It is not material at what particular time any one entered into the conspiracy. It is enough to know that he was a common conspirator." State v. Ryan, 1 L. R. A. (N. S.) 862, 865. The rule as to the relevancy of the acts and declarations of one conspirator as original evidence against all the conspirators is not affected by the fact that all conspirators were not present when the acts were done or the declarations were made, or that certain of the accused did not know of or concur with them at the time, if they are afterward connected with the conspiracy by relevant evidence. The relevancy of the acts and declarations of one conspirator is not affected by the particular time that he joined in the conspiracy. A person entering into a conspiracy already formed is deemed in law a party to all the acts done by the other co-conspirators, before or afterwards, in the prosecution of the enterprise.

*Horton* v. *State,* 66 *Ga.* 690. The test is, were the acts done or the declarations made after the conspiracy was proved to have been formed, and were they done or made in the furtherance of the conspiracy? *Wortham* v. *State,* 184 *Ga.* 674, 679 (2) (192 S. E. 720); *Wall* v. *State,* 153 *Ga.* 309, 317 (112 S. E. 142). When the concerted action is once, established, all the facts and circumstances which proceeded and connectedly led up to the robbery are relevant. It was proper to trace the conspiracy from its beginning. 2 Wharton's Crim. Ev. 919, § 1731; State *v.* McCahill, 30 N. W. 553, 555; Harris *v.* State, 20 S. W. 916. There is no merit in any of these grounds.

■ Special grounds 13 and 14. The defendant's counsel sought to impeach the witnesses for the State by asking them if they had been tried and sentenced for robbery on a previous occasion. The court properly sustained an objection that the record of the witness's conviction would be the highest and best evidence. *Morgan* v. *State,* 17 *Ga. App.* 124, 126 (3) (86 S. E. 281); *Johnson* v. *State,* 48 *Ga.* 116 (3); *Green* v. *State,* 125 *Ga.* 742 (6) (54 S. E. 724); *Hunter* v. *State,* 133 *Ga.* 78 (8) (65 S. E. 154); *Howard* v. *State,* 144 *Ga.* 169 (2) (86 S. E. 540); *Swain* v. *State,* 151 *Ga.* 375 (4) (107 S. E. 40).

■ The contention of the defendant in special grounds 15 and 25 is that the testimony of Mrs. McSinnett was inadmissible on the ground that the conversation with two of the alleged conspirators was made not in the presence of the defendant and was made after the conspiracy, if any, had ended. This contention is decided adversely to the defendant in the ruling of the companion case of *Thompson* v. *State,* 58 *Ga. App.* 593 (199 S. E. —).

■ Special ground 16 is without merit. Under all the evidence and circumstances of this case it was a question for the jury to determine whether the defendant was connected with the taking of the jewelry at the time of the robbery.

■ Special ground 18. The judge charged: "Although a person may have been present at or near the scene of a crime, yet if he did not in any way aid, abet, or procure its commission, or participate in it, he would not be an accomplice. If, on the other hand, he was present at or near the scene of the crime, if you find there was a crime, and did in some way aid, abet, or procure its commission, or participate in it he would be an accomplice." The

defendant contends that the charge was erroneous because "the court should have charged the jury that if any person *knowingly* aided, abetted, or procured the commission of a crime, he would be an accomplice." This ground is without merit. "The word 'abet' includes knowledge of the wrongful purpose of the perpetrator, and counsel and encouragement in the crime." *Loeb* v. *State*, 6 *Ga. App.* 23, 30 (64 S. E. 338). This part of the charge is in the language of Cann's Requests To Charge In Criminal and Civil Cases, §§ 165, 166, and is supported by *Loeb* v. *State*, supra; *Thornton* v. *State*, 119 *Ga.* 437 (46 S. E. 640) ; *Futch* v. *State*, 137 *Ga.* 75, 80 (72 S. E. 911).

■ Special ground 20. Movant contends that that part of the charge to the effect "if you are legally satisfied from the proof of acts and conduct submitted to you that there was a conspiracy or common intent, proof of those acts and that conduct would establish the existence of a conspiracy just as effectually as the same might be established by proof of an express agreement," is error for the reason that it contains an intimation or an expression of opinion on the part of the court that the State had proved certain acts and conduct on the part of the defendant and these acts and conduct had been submitted to the jury. This part of the charge is in the language of § 415 of Cann's Requests To Charge, and is supported by *McCormick* v. *State*, 176 *Ga.* 21 (2) (166 S. E. 762) ; *Stevens* v. *State*, 8 *Ga. App.* 217 (3) (68 S. E. 874) ; *Bolton* v. *State*, 21 *Ga. App.* 184 (94 S. E. 95). The effect of the charge complained of was to state hypothetically that if, from proof of certain acts and conduct submitted to the jury, they were legally satisfied that a conspiracy had been established, they would be authorized to find that proof of those acts and that conduct would establish the existence of a conspiracy just as effectively as the same might be established by proof of an express agreement. *Vann* v. *State*, 83 *Ga.* 44 (3 *a*) (9 S. E. 945) ; *Thomas* v. *State*, 49 *Ga. App.* 484, 489 (176 S. E. 155). There is no merit in this ground, for "it is the duty of the judge to declare to the jury what the law is, with its exceptions and qualifications; and then to state hypothetically, that if certain facts, which constitute the offence, are proved to their satisfaction, they will [be authorized to] find the defendant guilty; otherwise, they will acquit him." *Keener* v. *State*, 18 *Ga.* 194, 230 (63 Am. D. 269). With reference to this ground the

defendant further contends that "the court in effect told the jury if they believed the agreement between the defendant either express or implied to do an unlawful act that this defendant would be guilty even though no lawful act was committed." It may be that plaintiff in error's counsel failed to note that there is no such crime as conspiracy under our law but that one may be found guilty of a crime caused by acts pursuant to an already formed conspiracy. The crime is the act prohibited by statute, not the conspiracy alone. The conspiracy of itself is no crime. "The crime is that prohibited by the statute, and the conspiracy is referred to as an incident, and one of the means by which the act is accomplished." *Bishop* v. *State,* 118 *Ga.* 799, 802 (45 S. E. 614). It might be said that our whole law on the subject of conspiracy simply presents an aspect of our law of evidence. There is no merit in this contention of the defendant. The judge subsequently charged the jury, "If you find there was a conspiracy and that the defendant participated in the common intent and purpose to do the illegal act that was done, if any was done; and what was done was that which is alleged in the indictment, . . in pursuance of that common intent and purpose [the act so done] would be just as binding upon the defendant as if he had done the acts himself."

█ Special ground 19. The defendant excepted to the following excerpt from the charge: "If there was no conspiracy the defendant can not be held responsible for anything except what you may find was done with him present aiding and abetting therein; or that which he did himself. If there was a conspiracy and the defendant was one of the conspirators, and he was present and counseled and procured or commanded the doing of the unlawful acts charged, he would be guilty as such under the law. Or, if the defendant was present aiding and abetting in the commission of the offense charged, he would be guilty as a principal, if the offense was perpetrated as charged," on the ground "that the court told the jury in effect that the defendant, whether there was or whether there was not a conspiracy, before he could be convicted he had to be present aiding and abetting in the commission of the unlawful act. Movant contends that the jury, from the said charge, could not tell when the defendant was guilty of conspiracy and when he was not guilty of conspiracy." The third and last sentence of that part of the charge excepted to simply stated

affirmatively what constituted a principal in the second degree, and that if the jury believed the evidence did support a verdict against the defendant as a principal in the second degree, they would be authorized to find him guilty even though the indictment charged him as principal in the first degree. "'When principals in the first and second degrees are punished alike, no distinction between them need be made in the indictment. The act of one is the act of all.'" *Morgan* v. *State,* 120 *Ga.* 294 (48 S. E. 9) ; *Baker* v. *State,* 121 *Ga.* 189 (48 S. E. 967) ; *Futch* v. *State,* supra. The second sentence in that part of the charge excepted to simply stated affirmatively what must be shown in addition to a conspiracy, if any was proved in which the defendant was one of the conspirators, in order to convict the defendant, and that under certain aspects of the evidence the rule applicable to accessories before the fact might become applicable, to wit, that the guilt of the principal in the first degree must be established. *Rawlings* v. *State,* 163 *Ga.* 406, 425 (136 S. E. 448). The first sentence in that part of the charge excepted to stated negatively what was stated in the second sentence. In making the exception to the charge, it seems to us that counsel has again overlooked the fact that in Georgia there is no crime of conspiracy. Thus it would not be proper to charge the jury to bring in a verdict of a conspiracy to rob, but the verdict should be for robbery even though the State should prove that there was a conspiracy to rob and in pursuance thereof the defendant did rob. *Morgan* v. *State,* supra; *Brooks* v. *State,* 128 *Ga.* 261, 263 (57 S. E. 483, 12 L. R. A. (N. S.) 889) ; *Fudge* v. *State,* 148 *Ga.* 149 (2) (95 S. E. 980) ; *Kearce* v. *State,* 178 *Ga.* 220 (2, 3) (172 S. E. 643). This ground is not meritorious.

■ Special grounds 28 and 29. The gist of the contention in these two grounds is that a definition of conspiracy is not complete which states that a conspiracy is a combination or agreement between two or more persons to do something that is unlawful, and that the court should have stated, in addition thereto, in order to make the definition complete, that the defendant must do an overt act pursuant to the alleged combination or agreement. Our law recognizes that one may conspire with another to commit a crime, and the conspiracy is referred to as an incident to, and one of the means by which, the act is accomplished. A conspiracy in itself is no crime. The crime is the act prohibited by statute. The two

excerpts excepted to in these grounds are in accordance with the law of this State.

■ Special ground 27. This ground contends that the testimony of one accomplice is insufficient corroboration of the testimony of the other accomplice even if said to the jury to authorize the conviction of a felony. This contention has been decided adversely to the plaintiff in error in *Austin* v. *State*, 47 *Ga. App.* 217, 221 (169 S. E. 729). See also *Pope* v. *State*, 171 *Ga.* 655 (156 S. E. 599).

■ Special ground 21. The court refused to charge upon request that "whisky is not a subject-matter of larceny or robbery because no one can have a property right in whisky." We think Code, § 58-122, which provides that "no property rights of any kind shall exist in said prohibited liquors" should be literally construed to the end that intoxicating liquor as a beverage may be prevented. We do not think the legislature intended to say that it was wise to license robbery so as to discourage intoxication, or at least we would not like to impute such a construction to them. To construe the statute that a robber should go unmolested in the event the subject of his theft was liquor would be to encourage transportation, distribution, and consumption by a thief or a robber. In the language of the Supreme Court of Colorado in People *v.* Kilpatrick, 79 Col. 303 (75 A. L. A. 1475), we think the purpose of our statute denying property rights in prohibited liquor was "to limit civil rights, not criminal liability; to prevent the use of the law as a weapon of offense by the lawbreaker, not to make one crime a shield for the protection of the perpetrator of another. To all demands for possession of contraband, or damages for its conversion, it [the law] returns its fiat, 'No property;' to the thief who seeks its shelter it says, 'No asylum.'" We do not think that the legislature intended that a robber shall go unmolested in the event that the subject of his robbery is intoxicating liquor. This ground is without merit. *Fears* v. *State*, 102 *Ga.* 274, 279 (29 S. E. 463) ; Burgess *v.* State, 161 Md. 162 (155 Atl. 153, 75 A. L. R. 1471, 1474).

■ Special ground 22. The request to charge in this ground was covered by the general charge.

■ Special ground 30. The defendant excepts to the following charge of the court: "If you find there was no conspiracy, or

if there was a conspiracy and the defendant did not participate in the common intent and purpose to do what was done, or you find that what was done was not that which is alleged in the indictment, then anything done by any other person would not be binding upon the defendant in this case." Movant contends that this charge put a heavier burden upon him than the law puts upon him, because it told the jury that if the defendant did not participate in the common intent he would not be guilty, thereby intimating the converse. Further, that the court intimated and expressed an opinion, that the court told that "what was done" was the alleged robbery, that the court assumed that a crime was committed, and that it was for the jury to determine whether any crime was committed. This charge is in the language of § 401 of Cann on Requests to Charge in Civil and Criminal Cases, and is amply supported by Georgia authority. There was no error in the charge in the presentation of a particular hypothesis, the truth of the hypothesis being left to the jury to determine from the evidence. *Vann* v. *State,* and *Thomas* v. *State,* supra.

The evidence authorized the verdict.

*Judgment affirmed. Broyles, C. J., and Guerry, J., concur.*