29840.   BIRD *v.* THE STATE.

DECIDED FEBRUARY 27, 1943.

*E. C. Brannon,* for plaintiff in error.

*G. Fred Kelley, solicitor-general, J. E. Frankum,* contra.

MacINTYRE, J. The indictment was against George Bird and Jerry Black jointly, in two counts. Count 1 charged the selling or offering for sale, on July 29, 1941, of "alcoholic, spirituous, malt, and intoxicating liquors, contrary to the laws of said State." Count 2 charged that on July 29, 1941, George Bird and Jerry Black "did have, possess, and control (more than one quart of) alcoholic, spirituous, malt, and intoxicating liquors, contrary to the laws of said State." Only George Bird was tried. The jury acquitted him on the first count, but found him guilty on the second count. His motion for new trial was overruled, and he excepted. The case is a misdemeanor; and if the State proved that the defendant, at any time within two years before the finding of the indictment, did have, possess, and control more than one quart of the prohibited liquors, the verdict of guilty was authorized.

Clark testified as follows: "I am a deputy sheriff of Hall County, Georgia, and have been a deputy for about five years. I had occasion last summer, in 1941, to search the place of business operated by George Bird in this county, for intoxicating liquors. We found intoxicating liquors one time out there, and got about ten cases. It was being unloaded and carried into the defendant's place: They were unloading it off an automobile." Q. "Who was helping?" The court: "Is this a two-count indictment?" Mr. Frankum: "Yes, sir." Q. "Who was helping him unload?"

A. "There was a boy there that worked with him." Q. "With George Bird?" A. "Yes, sir." Q. "Was Jerry Black there at this time?" A. "Not on this time." Q. "Did you ever see him and Jerry Black unload any liquor there at his place of business?" A. "At the time we caught Jerry Black it was still on the automobile." Q. "Was George Bird with him?" A. "George might have been there. . . He wasn't with him at that time. That was at George Bird's place of business. The automobile was standing in the front there at his filling-station. That was about first dark— a little after dark. One time we come by, Mr. Bird and a fellow Parr that worked there was unloading a load of eight or ten cases. That was last year sometime. We found some in his store building some time last year, eight or ten cases each time. We caught Jerry Black twice at that place with liquor each time. That was what was known as George Bird's place—filling-station and store in Hall County. I made a case for each one of those. Mr. Black claimed the liquor twice. Cases were made against him, and he was fined. I imagine he paid a fine for it." Q. "Mr. Clark, do you know who operated that place out there?" A. "Well, we had always found Mr. Black—" Q. "Always found Mr. Black out there?" A. "Until six or eight months ago. After then Mr. Bird would always be there with him. We found at different times I imagine twenty-five cases all together. I just don't know whether Mr. Bird was living there or not. At one time when we was there Mr. Bird and wife both was there, and I don't know where they lived. I don't know when he ceased to operate that place. I don't know whether he ever did operate it or not, only we would find him there and see him when we passed. I don't know whether the license was ever in his name or not. We caught him on two different occasions with Jerry Black. One morning, in the early part of the morning, when we come up there Mr. Bird and this man was unloading it, and he wanted to know how come us up that early in the morning. The second time I caught him was one night—we was sitting there waiting, and seen this car pull up that belonged to him, and went and found the whisky on it. That was a 1934 brown Ford. I don't know who the automobile belonged to. We caught about ten cases of tax-paid liquor. They was not unloading it and putting it in the house—not that night they wasn't; that was the first time we caught him there. The last time they was

unloading; the first time they wasn't unloading. We caught them three times, one time caught them in the place of business. The next time it was night; we caught him just with the car with some on it, and caught it and what was in his place; and one morning, at five o'clock in the morning, caught him again, him and Mr. Black, and this man was unloading. Jerry Black said the whisky belonged to him, and he took the full blame for it. I don't know whether he paid a fine for it or not. During my experience as a deputy sheriff I often catch two people with a load of liquor, and one of them attempts to claim it and take it on himself. George did not sign his bond in that case. I wouldn't say whether George Bird's name is painted on the building or not. The whisky was in the place known as George Bird's place of business. I don't recall as I have ever heard George Bird say that was his place of business."

The court: "Do I understand that on *three* different *occasions within* the *past two years* you have made seizures out at the *place known as George Bird's place*—is that what I understand you to say?" (Italics our.) A. "Yes, sir." The court: "At one time I understand you to say you got *ten cases* inside the house?" (Italics ours.) A. "We got ten cases off of the automobile and what was in the house." The court: "At the time you got ten cases part of it was on the automobile?" A. "Yes, sir." Q. "It was parked in front of his place of business?" A. "Yes, sir." Q. "And the rest of it was on the inside of the house?" A. "Yes, sir." Q. "And that house was occupied by Mr. Bird?" A. "He was there one time when we caught a car sitting in his yard; about eight or ten cases." Q. "Any of it being unloaded at the time?" A. "No, sir; and then we come around one morning a little before daylight, and they was unloading." The court: "Who was doing that?" A. "Mr. Bird and another man." The court: "Was Mr. Bird aiding in helping tote the whisky?" A. "Yes, sir." Q. "You say that the defendant was helping carry it in?" A. "Yes, sir. That was what we commonly term government liquor—stamped. The judge asked about it being occupied by Mr. Bird—I don't know who lived in the house. I found the defendant in the room. It was a filling-station and a store building and a bedroom in connection with it."

"It is agreed that near the place said to have been occupied by Mr.

Bird there is a Coca-Cola sign with the word 'George Bird' written on it. You may accept that as being true, gentlemen, it having been stipulated between the parties on each side."

We think the evidence of this witness alone was sufficient to authorize a verdict that the defendant did have, or control, or possess prohibited liquors as charged in the second count of the indictment, this being the only count on which he was convicted.

■ Special grounds 1 and 2 are discussed together: It seems to have been a contention of the State that Jerry Black was working for, or at least obtaining liquor from, the defendant, and sold or delivered it to other persons. In other words, Bird was in the liquor business. Whether the indictment is joint or several, any defendant accused therein of having committed the misdemeanor may be convicted by proof either that he directly and personally enacted the criminal transaction, or that, being absent at the time of the commission of the misdemeanor, he procured, counseled, commanded, aided, or abetted the criminal transaction of another person who was the direct and immediate actor. *Loeb* v. *State,* 6 *Ga. App.* 23, 28 (64 S. E. 338); *Thomas* v. *State,* 65 *Ga. App.* 749 (16 S. E. 2d, 447). Broxton, a policeman in Gainesville, testified that he had not seen the defendant in the possession of whisky in Hall County within the last two years. However, he testified that he had seen Black with two pints of intoxicating liquor, and saw him deliver the two pints out of an automobile at the Princeton Hotel in Gainesville, on July 29, 1941; that he arrested Black at the time he had the liquor in an automobile, a "39 cream or gray Ford with a fox tail on it." He also testified that he had seen him several times before that, but did not know his name, and had seen him operating this same car before. "I had seen that same automobile at the defendant's place. In performing my duties, and in going around on my beat as a policeman, I had seen this automobile at the defendant's place a good many times through a course of a month or two—two months. I had not seen Jerry Black working at the defendant's place there. I had not seen him hanging around or staying there. I had seen this same automobile he brought this whisky in, there quite frequently. That was intoxicating alcoholic liquors, in Hall County. . . I did not check the numbers [on the automobile]. The only thing I was going by was the general appearance, and it appeared to be the

same automobile. As to what kind of automobile it was, I believe it was a Ford, a '39 Ford. The best of my recollection it was a '39 Ford, cream or gray color. I say that was the same automobile I had seen up there at various times, for the reason, well, the appearance. . . George Bird was not with him [Jerry Black]. . . There is a great many '39 Fords gray and of that same color, and I might see one to-day and see one that looks like the same one to-morrow. . . There is nothing peculiar about a fox tail being on the front; some of them have them on the front and some on the rear, and some have them on the radiator and some of them tied to the radio aerial, and you see them on a great many taxis and bicycles."

Bonds, a policeman, testified that Bird's place is located outside the City of Gainesville. "He has been operating that place for two or three years. I do not know about Jerry Black's working at the place. I have not seen the defendant with any intoxicating liquor within the last two years in this county. I have seen Jerry Black with intoxicating liquors, and it was in June of last year. [The trial was on February 10, 1942]. I caught him delivering one pint of whisky at the Wheeler Hotel to a bell-boy there. He came to the hotel in a gray V-8 coupe, as I remember. I couldn't say that I have seen this automobile at the defendant's place at any time. . . George Bird was not with him. Jerry Black was by himself. I am not certain about the model of the car." This testimony of Broxton, Bonds, and Dorsey, with reference to the car or cars in question and the acts of Jerry Black, was objected to on the grounds that it injected into the case alleged acts of a separate and distinct person in no way connected with or attributable to the defendant, and that the defendant was not in any way connected with the transaction the witnesses were testifying about. In reply to the objection the judge said: "As I recall the testimony, some one witness testified to the effect that a car similar to that description stayed at Mr. Bird's place. I will not rule out the testimony; but I will and do now instruct the jury that unless they are satisfied that the car which may have been delivering any whisky was a car that stayed at Mr. Bird's place, or was owned by Mr. Bird, that you would not consider any testimony with reference to any whisky delivered by a car, unless you are satisfied from the evidence that that car was used in connection with the business

of Mr. Bird. ‚ If you are satisfied that it was, then you may consider it as a circumstance, along with all of the other facts and circumstances in the case, in determining the issue which will be submitted to you."

The State's contention seems to have been that there was a joint undertaking on the part of Jerry Black and defendant to have, control, and possess whisky, and even to sell it. We think that after the State proved various circumstances, one of which showed that the defendant had unloaded large quantities of liquor at "a place" which the evidence authorized the jury to find was the place of business of the defendant, and another of which proved that the defendant was assisting in unloading the liquor in person, it was proper to allow the State to prove other facts and circumstances which, according to the common experiences of men, would tend to support the theory that Jerry Black was using the automobiles to carry liquor from the defendant's place to various points in the county where he would sell the same. The fact that one of the witnesses, Broxton, saw the defendant selling whisky from an automobile which "quite frequently" stayed around the defendant's place of business, and which he had seen at defendant's place of business a good many times through a course of two months, and the fact that the witness Bonds on another occasion saw Black carry whisky in an automobile to the Wheeler Hotel and there deliver it to a customer, a bell-boy, might both be considered by the jury as circumstances, which, taken along with all the other circumstances proved by the State, supported the theory that the defendant's scheme or system was to allow Black to use automobiles in carrying the whisky from defendant's place of business, just beyond the city limits, to the various places of sale in Gainesville. While neither of the acts testified to by these witnesses, taken by itself, would have been relevant, yet the taking of liquor in a car which was "quite frequently" seen around the defendant's place of business, just beyond the limits of the City of Gainesville, and the carrying of whisky into Gainesville and selling it at hotels by Black, it seems to us, in view of the other circumstances proved, was relevant to explain a scheme or system of selling or handling intoxicating liquors carried on by Black and the defendant, and tended to make the scheme more clearly discernible. *Nelson* v. *State,* 51 *Ga. App.* 207 (180 S. E. 16), *Taylor* v. *State,* 174 *Ga.* 52, 67 (162 S. E.

504). The rule of evidence which requires it to be ruled out is intended to prevent verdicts from being based on surmise or prejudice, and is not meant to exclude facts which, with others, tend to establish the crime charged. Hence the two acts of sale from the automobile at the hotels tended to prove the system or scheme of handling the prohibited liquors, made the scheme more clearly discernible, and were thus admissible. The objections urged in these two grounds are not meritorious.

■ Ground 3: The following testimony was admitted over objection: "I know of Jerry Black having been brought to the jail last summer, on account of a seizure of some intoxicating liquor; and George Bird came down there to make his bond. I had seen Jerry Black at the place of business operated by the defendant in Hall County along about that time. George Bird put up a cash bond for Jerry Black in one case and in one case he didn't. Mr. Broxton made one case, and Mr. Rad Bonds and Strickland made the other, last summer sometime. The defendant came to see about the matter each time, and put up a cash bond. [I know personally that the defendant has been caught in the possession of whisky in Hall County. I never did catch Mr. Bird with any liquor, and my testimony is from the records of the police department. The liquor was brought to the city hall, and Mr. Bird was brought in at the time the whisky was. The officers at that time in the presence of the defendant stated they had caught him with whisky. He did not make a denial of it. He didn't ever deny it and never affirmed it."] [Brackets ours.] The testimony quoted above was admissible for the same reason as was the testimony referred to in the preceding division of this opinion. The testimony above quoted in brackets was objected to in the following language: "We move to exclude all evidence about the defendant being caught with whisky, as being hearsay, and there was higher and better evidence of it if a record was made as testified." The evidence in brackets above was objected to en bloc; hence, if any of it was admissible, the failure to sustain the objection was not reversible error. The last sentence was admissible for the reason that the jury would have been authorized to find therefrom that the defendant himself admitted, by his acquiescence, that the whisky referred to was in his possession at the time stated.

■ Grounds 4 and 5: At the time the judge overruled the ob-

jection to the parts of the testimony of Broxton, Bonds, and Dorsey, referred to in divisions 2 and 3 of this opinion, the court stated, in reply to the motion to rule it out: "As I recall the testimony, some one witness testified to the effect that a car similar to that description stayed at Mr. Bird's place. I will not rule out the testimony; but I will and do now instruct the jury that unless they are satisfied that the car which may have been delivering any whisky was a car that stayed at Mr. Bird's place or was owned by Mr. Bird, that you would not consider any testimony with reference to any whisky delivered by a car, unless you are satisfied from the evidence that that car was used in connection with the business of Mr. Bird's. If you are satisfied that it was, then you may consider it as a circumstance along with all of the other facts and circumstances in the case in determining the issue which will be submitted to you." The judge also stated: "I will overrule that motion, and I will and do now instruct the jury that any testimony connecting Jerry Black with the possession and sale of whisky would not be admissible in this case unless you find, and are satisfied from the evidence beyond a reasonable doubt, that Jerry Black was acting for or with the defendant, George Bird. And I instruct you, gentlemen, that you may find that either from direct evidence or any indirect or circumstantial evidence." Grounds 4 and 5 are without merit.

Ground 6: When the testimony of Broxton and Bonds, quoted in division 2 of this opinion, was first objected to, the judge stated: "Unless they connect up by showing a connection with the defendant I will rule it out." At the close of the testimony for the State, the defendant renewed his motion on the ground that such testimony had not been connected up with the defendant. The judge thereupon overruled the motion, and instructed the jury as stated in division 3 of this opinion, which in effect was that it must be connected up with the defendant before the jury could consider it. The defendant contends that the judge's failure to specifically repeat this instruction in his general charge was in effect an expression to the jury that the evidence had been connected up with the defendant. This ground is without merit.

Ground 7: After the State rested, and the defendant put up his testimony, and the State put up its rebuttal testimony, the defendant, in order to preserve his objections, renewed the objec-

tion to the evidence of Broxton, Bonds, and Dorsey, as stated in division 5 of this opinion. Hence the ruling in division 5 controls, adversely to the defendant, the objection so made.

■ Ground 8: This ground relates only to count 1 of the indictment, on which the defendant was acquitted. The defendant can not complain of alleged error in the charge as to the count on which he was acquitted. *Mitchell* v. *State, 39 Ga. App.* 100 (2) (146 S. E. 333).

■ Ground 9: The charge objected to here was verbatim in the language of the Code, § 38-409, as follows: "Acquiescence or silence, when the circumstances require an answer or denial or other conduct, may amount to an admission." The judge very carefully interpreted and explained this section in his charge, and the testimony of Dorsey, referred to in division 3 of this opinion, authorized the charge as given. Code, § 38-409; *Cobb* v. *State, 27 Ga.* 648; *Moye* v. *State, 66 Ga.* 740; *Gates* v. *State, 20 Ga. App.* 171 (92 S. E. 974); *Chapman* v. *State, 28 Ga. App.* 107 (110 S. E. 332); *Williamson* v. *State, 29 Ga. App.* 283 (114 S. E. 919); *Ball* v. *State, 47 Ga. App.* 804 (171 S. E. 726).

■ Ground 10: The judge charged the jury: "Now I charge you, gentlemen of the jury, that if you find that this defendant did in this county, at any time within two years prior to the return of this indictment in this court, . . have, possess, or control any amount of alcoholic, spirituous, malt, or intoxicating liquors in excess of one quart, then he would be guilty of the unlawful possession and control of intoxicating liquors, and would be guilty under that count, that is, count 2 of this indictment." The defendant objected to this charge, on the ground that in his statement he admitted that he had pleaded guilty in having, possessing, and controlling intoxicating liquors about one year before the trial, and had paid a fine; and that the court should have instructed the jury that he could not be convicted a second time for this same offense, and that it was necessary for the court to instruct the jury for them to find that the defendant had been in the possession, within two years, of whisky other than that involved at the time he had admitted having possessed certain liquors and paid a fine therefor. There was no plea autrefois convict. The evidence nowhere showed that the defendant had been tried and convicted of possessing whisky at any time before the finding of the indictment, or any

other time. However, the defendant in his statement to the jury did say that he had pleaded guilty about one year previously, and had paid a fine. There was no request to charge. ·"This court has frequently decided that the judge may construct his charge upon the various issues made by the evidence; and that if a defense is set up in the statement alone, it is not error for the judge to omit submitting the law appropriate to such defense, in the absence of a timely written request." *Watson* v. *State,* supra. See also *Easterling* v. *State,* 11 *Ga. App.* 134 (74 S. E. 899). The charge complained of in this ground was not error for any reason assigned.

Grounds 11, 12, and 13: Neither the questions propounded by the judge nor the answers elicited thereby, complained of in grounds 11 and 12, were the equivalent of intimating and expressing an opinion, or the equivalent of directing a verdict of guilty; nor did the question propounded by the court, taken in connection with the charge, show reversible error as insisted in ground 13.

Ground 14: We do not think the record can be interpreted as showing that there was any written request to charge, or any equivalent thereof; and under the rule of law that "A defendant's statement alone, however, though it might authorize, would not require such a charge . . in the absence of a request," this ground is not meritorious. *Hilburn* v. *State,* supra.

Judgment affirmed. *Broyles, C. J., and Gardner, J., concur.*