## JOHNSON v. THE STATE.

1. Where a person accused of crime was tried and convicted, and a new trial was granted, it furnished no cause of objection on his behalf on the second trial that certain of the jurors then on the jury list had been summoned at the first trial and had been stricken by the State or the accused; nor did it give greater force to the ground of objection to having the jurors put upon him, to add in the alternative that they were either stricken by the State or the accused or disqualified for cause, without showing what jurors were disqualified for cause, or for what cause, or that objection was made to any particular juror or jurors on that ground.

2. Where a person was accused of the murder of his father by assassination, there was no error in admitting evidence to the effect that before the homicide he had spoken of his father's having insurance on his life, and that shortly after the killing he asked a witness to come down and look over his father's papers, saying that his father had life insurance and some money in bank, and that he desired the witness to come down and look over the papers for him and tell him how to get the money.

3. Where the evidence, without conflict, tended to show that the deceased was assassinated, and the accused in his statement before the jury spoke of his father's being killed, referred to the homicide as a murder, and said that if he knew who had done the killing he would "work ten years to break his neck," but added, "I am innocent of the crime," it was not error for the court to charge the jury, that, while the defendant admitted that there was a killing and that it was murder, he contended that he was not the guilty person and that he had nothing to do with the homicide of his father.

4. There was no error in any of the other grounds of the motion for a new trial, for any reason assigned; and the verdict was supported by the evidence.

Submitted January 20,—Decided January 31, 1908.

Indictment for murder. Before Judge Mitchell. Colquitt superior court. November 30, 1907.

*J. A. Wilkes,* for plaintiff in error. *John C. Hart, attorney-general,* and *W. E. Thomas, solicitor-general,* contra.

LUMPKIN, J. James Johnson was indicted for the murder of J. A. Johnson. He was convicted, and sentenced to imprisonment for life. He moved for a new trial, which was refused, and he excepted.

1. One ground of the motion complained, that, after the State and the accused announced ready for trial, the jury list furnished to the accused contained names of jurors stricken when he was tried on a former occasion for the same offense (a new trial having been granted). Counsel for the accused objected to such

jurors being put upon him, because at the former trial they were either stricken by the State or the accused, or disqualified for cause; but it was not disclosed which jurors were stricken by one side or by the other, or which were excused for cause. This ground sets out no sufficient cause for a new trial. No jurors were challenged as disqualified for any legal reason. That counsel for the State may have stricken certain members of the jury on the former trial would indicate that those jurors were unsatisfactory to the State rather than to the accused, and would furnish no reason for discharging them on a later trial, on motion of the accused. The mere fact that jurors may have been put upon the prisoner at a previous trial, and rejected by him, did not furnish good ground for challenge to the poll. *Blackman* v. *State*, 80 *Ga.* 785 (2) (7 S. E. 626); *Reid* v. *State*, 50 *Ga.* 556. Certainly the objection, which confusedly included several jurors occupying different situations, furnished no cause for a new trial.

2. Other grounds of the motion for a new trial complain of the admission of evidence tending to show that the defendant, who was accused of the murder of his father, was under the impression that the father had insurance on his life. One of these grounds was imperfect in merely showing that an objection was made to a question, without stating what was the answer. The substantial point raised was that it was not shown that the defendant was the beneficiary under the policy of insurance, or thought himself to be such. The same case was before this court upon exception to the overruling of a motion for a new trial after a former conviction. 128 *Ga.* 71 (57 S. E. 84). In that motion objection was made to a question touching the life insurance and the knowledge of the accused thereof. The ground of the motion was not properly made, in that it failed to set out the evidence complained of. Reference to the case as then reported will show that no specific mention of this ground was made in the headnotes. In the course of the opinion Mr. Justice Beck said: "Nor were any of the rulings upon the admissibility of testimony shown to have been erroneous, save the one which we will take up for consideration. A witness for the State, over timely and proper objection, was permitted to give testimony to show that the accused was at the time of the homicide living in needy and indigent circumstances." He then proceeded to discuss this ground, and in doing so said: "The

court had permitted the solicitor-general to introduce testimony tending to establish the fact that the defendant knew that the deceased, the father of the defendant, had insurance upon his life; and that he had money in bank. The court properly admitted this testimony. The evidence in regard to the insurance, however, would be admissible only in case it should be made to appear that the accused was a beneficiary under the policy of insurance upon the life of the father, or that he believed himself to be a beneficiary. Such evidence is admissible under the rule that evidence going to show motive is always material and relevant to the issues on the trial of one for murder, where the accused denies the act of killing. If one by the death of another can reasonably expect to come into the immediate possession of property, that fact tends to show a motive for the murder on the part of the one to be profited by the deed." On the second trial a witness testified, that, very shortly after the death of the father of the accused, the latter asked the witness to come down and look over his father's papers; that he said that his father had life insurance and some money in the bank, and asked the witness to come down and look over the papers for him and tell him how to get the money. Another witness testified, that, less than a year before the father of the accused was assassinated, the accused talked to the witness about the fact that his father had insurance on his life. He told the witness that he was opposed to his father taking life insurance, as the latter was a poor man, and, in the opinion of the accused, he could not carry it. The accused did not tell the witness to whom the policy was payable or who was the beneficiary under it. It also appeared that just after the murder the accused moved into the house where his mother lived, to reside with her. The effort was not to show that the father actually had insurance upon his life, or that the son was the beneficiary named in the policy, or was in fact beneficially interested in the maturing of the policy by the death of his father. The evidence was offered to show that the accused spoke of his father's having insurance upon his life and also having some money; and that he was asking the assistance of another to collect it shortly after the homicide. Whatever may have been the fact as to the insurance, in the form in which the evidence was offered at the second trial, it was admissible to show the impression on the mind of the accused, and what he said on

the subject of the insurance and other property. Its probative force may not have been great, and it may not have very strongly indicated a motive for the terrible crime of patricide. But whatever may have been its proper weight as evidence, it was admissible, in connection with the other testimony. This does not conflict with the opinion of Mr. Justice Beck above quoted. It was not a case of proving the actual insurance and the actual probability of benefit thereunder to the accused, but of showing his statements, which might throw light on his impression or belief and on the question of possible motive. The expression, "the beneficiary under the policy," used by Mr. Justice Beck was not employed in a narrow, technical sense; but rather in the broad meaning of one who would be benefited. Nor was it intended to exclude the statement of the accused in regard to insurance, if, taken in connection with the other testimony, it tended to show motive. In connection with the other evidence introduced, it was legitimate testimony for the consideration of the jury.

3. Error was assigned on the following charge of the court: "In this case, gentlemen, there is no contention that the killing was done in self-defense, or under circumstances of justification under the law; because if one man kills another in self-defense, it must be against one who manifestly intends or endeavors, by violence or surprise, to commit a felony upon his person. And then, the bare fear that this offense was about to be committed shall not be sufficient to justify the killing; but it must appear that the circumstances were sufficient to excite the fears of a reasonable man, [and] that the party killing really acted upon the influence of these fears and not in a spirit of revenge. This would apply if self-defense was set up in this case. But in this case the defendant contends, while he admits that there was a killing, and that the killing was murder, he contends that he is not the guilty person, that he had nothing to do with the killing of J. A. Johnson, his father." It was urged that this charge injuriously affected the defendant, whose plea of not guilty put in issue all the material allegations of the indictment; and that there was nothing in the evidence, the statement of the accused or any admission of his counsel to authorize it. On turning to the statement made in open court it appears that the accused said: "On the 5th day of September, when my father was killed, I went to his house—the

evening before he was killed that night. . . If I knowed who killed my father, I would work ten years to break his neck—if I knew who killed him. I am innocent of the crime. I never done it. . . I wore a number nine [shoe] at the time the murder was done." Thus in his own statement he spoke of his father's having been killed, of the homicide as being a crime, and one for which he would work to break the neck of the perpetrator, and then in terms referred to it as a murder; but he denied that he was the guilty party. The evidence tended to show that the deceased was assassinated by being shot with a gun loaded with buckshot, and that the crime was committed by a person standing on the outside of a house, while the deceased was seated within. A witness testified that the accused had said that it would never be found out who killed his father. In regard to this testimony the accused (who introduced no evidence) in his statement said: "My uncle stated about me saying it would not be found out. He was mistaken. I said I feared it never would be found out." It is clear that the accused did not make or rely on any contention that no murder had been committed; but himself before the jury referred to and treated the killing as a murder, but denied that he was the guilty party. Under these circumstances, there was no cause for a new trial in the charge quoted above. In *Young* v. *State,* 125 *Ga.* 587 (54 S. E. 82), the members of this court were divided in opinion as to whether the facts of that case authorized the charge given. In the case before us we are all agreed that there was no ground for a reversal.

4. The other grounds of the motion for a new trial do not require extended notice. There was no error for any reason assigned. The crime was apparently an assassination. There were no eye-witnesses to the homicide. Evidence tending to show that the accused was the perpetrator of the deed has been twice submitted to a jury; twice have they found him guilty; and each time their finding has been approved by the presiding judge. After the first verdict, a reversal was granted on account of an error of law. We can not say that the verdict was without sufficient support in the evidence.

*Judgment affirmed. All the Justices concur.*