## WELDON *v.* THE STATE.

1. The evidence authorized the verdict.
2. The evidence set out in the second division of the opinion was not inadmissible for any reason assigned.
3. The language of the court, "I will let him [the witness] state it if it was made in his presence, on the idea of implied admissions. I do not know what it is," is not open to the criticism that it was an expression of opinion as to what had been proved.
4. The court did not err in admitting the evidence set out in the fourth division of the opinion. The evidence was admissible for the purpose of showing motive for the homicide.

5. The charge of the court on the subject of conspiracy was not error, as contended, for the reason that there was no evidence upon which to base such a charge. Conspiracy may be shown by circumstantial as well as by direct evidence.

6. Under the evidence the venue was sufficiently proved.

No. 4087. April 19, 1924.

Murder. Before Judge Roop. Coweta superior court. November 17, 1923.

*A. S. Camp, G. G. Finch,* and *J. S. Hall,* for plaintiff in error.

*George M. Napier, attorney-general, W. Y. Atkinson, solicitor-general, T. R. Gress, assistant attorney-general, W. L. Stallings,* and *C. H. Arnall,* contra.

HILL, J. 1. The grand jury of Coweta County jointly indicted J. W. Minter, Grady Minter, Jeff Minter, Floyd Weldon, Leon Goodrum, and Walter Feltman for the offense of murder, "for that the said [defendants named], on the 10th day of August in the year 1923, in the county aforesaid, then and there unlawfully, wilfully, and feloniously, and with malice aforethought, did kill and murder Millard Trouton by shooting him with a loaded pistol, and by drowning him, and by striking and beating him with a large rock, and by striking and beating him with some blunt instrument to the grand jurors unknown." Floyd Weldon was tried separately, and was convicted of murder, with a recommendation to the mercy of the court; and he was accordingly sentenced to the penitentiary for life. The evidence for the State showed that on Tuesday, August 14, 1923, Trouton's body was found in a badly decomposed condition in Line Creek, which is on the dividing line between Coweta and Fayette Counties. The evidence also tended to show that the death of the deceased resulted from drowning; that his legs were tied together with a short piece of rope to which was attached a trace-chain; that he had large welts upon his back, as if he had been beaten; and that the top of his head had been crushed in as with some blunt instrument. When the body was discovered in the creek it had been dead for about four days. On Friday night, August 10, about 7 o'clock, the deceased was called from his home in Newnan, Coweta County, by Walter Feltman, for the alleged purpose of going to a near-by store in order to get some tobacco; and after the deceased had gone some fifty yards from his home, he was abducted and put into an automobile by a crowd of five men, composed of J. W.

Minter, the father-in-law of the accused, Grady and Jeff Minter, who were sons of J. W. Minter, Floyd Weldon, and Leon Goodrum, who was the owner of the automobile, the latter two being sons-in-law of J. W. Minter. The deceased was not seen from the time he was put into the automobile on that night until his body was found in the creek on Tuesday following. A few days after the body was found and the defendant was arrested, he made a written statement, which appears to have been voluntary, in which he admitted having left Atlanta in the automobile of Goodrum, together with the two Minters and Goodrum, and that he was with them when Trouton was abducted, and was with them during the time that Trouton was being taken from Newnan to the creek. There is nothing in the statement as to what actually took place at the bridge, the alleged scene of the homicide. According to "admissions" and "implied admissions" made by one of the Minters in the presence of the defendant, the defendant actually participated in the homicide after those in the automobile had arrived at the bridge, by going across the bridge into Fayette County and bringing back a rock which weighed about twenty-five pounds, and placing it upon the breast of the deceased. It was tied there by one of the defendants, and the body was thrown into the creek. The rock was found in the creek when the body was discovered, and fit into a place in the abutment of the bridge from whence it had been taken. From a careful reading of all the evidence we are of the opinion that it was sufficient to authorize the jury to find that there was a conspiracy in order to take the life of Trouton, that the defendant on trial here was one of the conspirators, and that the evidence authorized the jury to find him guilty of murder.

2. The first special ground of the motion for new trial alleges that the court erred during the trial by allowing the following evidence to be introduced over the objection of the defendant's counsel: "Q. Have you heard him say anything except what is in writing? A. I can't say that I have. Q. Did you hear him make any statement other than what is in writing? A. No, that is about what he had already told. Q. Did you see him sign this statement? A. Yes. Q. After making this statement, I will get you to state whether or not in the presence of Grady Minter you ever heard any conversation between Grady Minter and the

defendant, Floyd Weldon? A. Yes. Q. I will get you· to state what that was. A. Grady said, when the car stopped down there and they carried him on the bridge, that Floyd went across to the Fayette side and brought back a rock. Q. What did he say? A. He said he brought back a rock.

"Mr. Finch-: I object to that. By the court: Object to what? Mr. Finch: To the statement made by Grady Minter. By the court: I will let him state it if it was made in his presence, on the idea of an implied admission. I don't know what it is.

"Q. Tell about that conversation. A. The first thing Floyd told me was, Grady would tell the truth about it. We brought Grady down to where Jeff and Floyd was, and Grady said Floyd went across the bridge and brought back a rock.

"By the court: Was the defendant present when Grady said that? A. Yes, sir. By the court: Go ahead and state what was said in the presence only. A. That is what he said; he said he went back across the creek and brought a rock. He said he didn't know whether he placed it on his breast or by his side.

"Q. On whose breast? A. On Trouton himself or by his side; and he said that his father tied this rock to Trouton's breast and they threw him over. Q. What did Weldon say? A. He didn't deny it. Q. Did Weldon say that Grady would tell the truth about it? A. Yes, sir. Q. Did you ever hear Weldon say on what part of the bridge Trouton was thrown off?

"Mr. Finch: We object to that; he has stated all he said was in writing. The court: Let him state what was said, if he said anything; just go ahead, if he said anything other than is in writing. A. I don't remember that he said anything except what is in writing."

It is contended by movant, that the statement of Grady Minter, which was testified to by Walter Dial, was inadmissible as being the sayings of an alleged coconspirator, that there was no conspiracy and that the failure of the trial court to exclude this evidence, which was prejudicial to the defendant, was reversible error. The Penal Code (1910), § 1025, provides that "After the fact of conspiracy is proved, the declarations of any one of the conspirators during the pendency of the criminal project, are admissible against all." § 1029 provides that "Acquiescence, or silence, when the circumstances require an answer or denial or

other conduct, may amount to an admission." The testimony was evidently offered as being admissible under the latter section; and we are of the opinion that it was admissible for the purpose of showing an implied admission. Furthermore, we are of the opinion that no timely and sufficient objection to the evidence is shown to have been made at the time it was admitted, nor was any motion made to rule out such testimony. It should appear from the record that proper objections were made, and that they were passed on in the trial court, before exceptions made thereto can avail movant in the Supreme Court. *Phillips* v. *State,* 102 *Ga.* 594 (27 S. E. 699); *While* v. *State,* 116 *Ga.* 573 (42 S. E. 751); *Wells* v. *State,* 97 *Ga.* 209 (22 S. E. 958); *Summers* v. *State,* 116 *Ga.* 535 (42 S. E. 779); 8 Cum. Supp. Enc. Dig. Ga. R. 1023. There is no merit in the second ground of the motion for new trial, which is substantially the same as made in this division of the opinion.

3. Complaint is made, in the third ground of the motion for new trial, that the court erred during the progress of the case by intimating or expressing to the jury his opinion as to what had been proved. The whole of this testimony will be found quoted in the first ground of the amended motion set out above. The following occurred: "Mr. Finch: I object to that. The court: Object to what? Mr. Finch: To the statement made by Grady Minter. The court: I will let him state it if it was made in his presence, on the idea of an implied admission. I do not know what it is." Movant contends that the court did express an opinion in the language above quoted, by intimation to the effect that "it was an implied admission." It will be seen that what the court *did* say was that he would let the witness state it, if it was made in his presence, "on the idea of an implied admission. I do not know what it is." We do not think that the remarks of the trial judge are open to the criticism made. *Oliveros* v. *State,* 120 *Ga.* 237, 242 (47 S. E. 627, 1 Ann. Cas. 114); *Burley* v. *State,* 130 *Ga.* 343 (60 S. E. 1006).

4. Error is assigned in the fourth ground of the motion for new trial, because the court below excluded the following testimony, and later allowed it to be considered by the jury:

"Mrs. M. V. Short, where do you live? A. I live on G. E. Parks' farm, about four miles off from town. Q. What direction

is that? A. East of town. Q. Do you know the defendant? A. Yes, sir. Q. How long have you known him? A. Ever since he was a small child. Q. Did you know Millard Trouton? A. No, sir, I never knew him. Q. You ever know of him? A. I have heard of him. Q. Do you remember hearing Floyd Weldon make any statement about Millard Trouton and about J. W. Minter. A. Yes, sir; I have. Q. Where was that? A. It was at Weyman Smith's one Sunday afternoon. Q. How long ago? A. I think it was in March or April last year. Mr. Finch: We object to that; it was too remote to have any connection with this case. The court: I overrule your motion. Go ahead. Q. I will get you to state what passed between you, what Mr. Weldon said, just what he said about Trouton. A. I don't remember him saying anything, only he was talking about him and Mr. Minter one night. I don't know where they were at, I don't remember; but I do remember him making the remark at the supper-table one night, he and Mr. Minter—somewhere, I don't remember whether at Mr. Minter's home or not, but somewhere talking about this boy. Q. What boy? A. Trouton, I think it was, and he said when this boy was in the room and this girl. Q. What girl? A. I guess it was his wife; he said, if I am right, he said Phenie. He said they went to this room door, and he said Mr. Floyd called this girl and told her to open the door, and she said this boy, her husband, wouldn't let her, and he said he told her if she didn't open the door they would burst it down, but they didn't; they went around to the window, and he said he could see this boy in the window, and he said Mr. Minter started to shoot this boy and he said he reached back; he said, 'Wait, you won't have to do it,' and he reached down and got a brick, and as he tried to throw it Mr. Minter caught his arm and told him just to wait about that.

"Mr. Finch: I move to strike that as being irrelevant and immaterial. The court: I don't see how it is relevant. Did she say when that occurred? A. March. The court: March of what year? A. 1922. Mr. Finch: What year did he say that took place? A. He didn't say. Q. You say he told you this in March, 1920? A. He was telling me this in March, 1922. The court: I don't think it is admissible. I sustain the objection and rule it out.

10

"Here the court ordered the jury to retire. Jury retired. The court: If I get the testimony of this lady, it was about a year before this that the statement the defendant was making was made. Mr. Finch: Yes, sir. The court: That on a certain occasion that the father was about to do certain things, and he stepped up and said he wouldn't have to do it. I think, on reflection, that would be admissible as showing motive, to have such probative value as the jury might want to give it. If it has any probative value in showing motive or intention upon the part of the defendant, as to whether or not he might have any grievance and will take any part in the killing of Trouton, I think it ought to go to the jury. Mr. Finch: She said she didn't know when the transaction took place, but the conversation took place last March. The court: I will admit it. Let the jury come in. Jury returned. The court: If you want to cross-examine her I will let her come back.

"The court: Now, gentlemen of the jury, the testimony of this witness that I ruled out while ago, I withdraw that ruling, and I admit it to the jury for you to give it such probative value as you may think it entitled to, if it does illustrate the motive of the defendant, if it does illustrate it, in your opinion; you to pass upon that, to determine the issue in the case."

The objection to this evidence is that the alleged statement was too remote, and that the witness did not testify as to when the alleged transaction took place. We are of the opinion that neither of these objections is good. The witness did state about when the alleged statement was made, and we are of the opinion that the statement was admissible for the reason given by the trial judge, viz., for the purpose of showing motive for the homicide. *Helms* v. *State,* 138 *Ga.* 826 (76 S. E. 353) ; *Boone* v. *State,* 145 *Ga.* 37 (88 S. E. 558) ; *Johnson* v. *State,* 130 *Ga.* 22 (60 S. E. 158) ; *Burley* v. *State,* supra.

5. The fifth ground of the motion for new trial assigns error because the court charged the jury the law of conspiracy, when, it was alleged, there had been no conspiracy proved and there was nothing in the evidence upon which to base a charge of conspiracy. We cannot agree to this contention. There was abundant evidence tending to show a conspiracy, which may be shown by circumstantial as well as by direct evidence. *Linn* v. *State,* 140 *Ga.* 387 (7*a*)

(79 S. E. 29); *Weaver* v. *State,* 135 *Ga.* 317 (69 S. E. 488). The fact that the judge charged the law of conspiracy does not lay the charge open to the objection that "the charge expressed by inference an opinion of the trial court that a conspiracy had been proven by the evidence on the trial of the case."

6. The seventh and eighth grounds of the motion for new trial assign error for the alleged reason that the venue had not been proved or the crime shown to have been committed in Coweta County; and that the court erred in giving the following charge to the jury: "Now the law declares that whenever a stream of water is the boundary of a county, the jurisdiction of the county shall extend to the center of the main channel of such stream; and if the offense is committed on such stream, and the evidence on the trial does not definitely disclose in which county it was committed, the courts of either county may maintain jurisdiction for the trial and punishment of the offender. So that, gentlemen, you will look to the evidence in this case and determine, if the crime alleged in the indictment has been shown to have been committed, whether or not it was committed on a stream of water and whether such stream of water was the boundary between this county and the adjoining county; if it was committed on the stream of water, then it was committed between the center of the main channel of such stream and the Coweta side, then that would be in Coweta County; or if you should find from the evidence on the trial that the evidence does not definitely disclose in which county it was committed, then the courts of either county would have jurisdiction to try the case." Movant contends that this charge was error, because "it relieved the State of the very material burden of establishing the venue." The exception to this charge shows no ground for reversal, and discussion is unnecessary here in view of what is said and ruled in the case of *Grady Minter* v. *State,* this day decided.

    *Judgment affirmed. All the Justices concur.*

  Russell, C. J., concurring specially. I do not agree to the ruling made in the fourth headnote; but in view of the record as a whole, I do not think the admission of the testimony was so prejudicial as to affect the correct result reached by the jury.