## 19664. SIMS v. THE STATE.

DECIDED JUNE 11, 1929. REHEARING DENIED JUNE 27, 1929.

*Louis H. Foster,* for plaintiff in error.

*John A. Boykin, solicitor-general, J. Walter LeCraw, John H. Hudson,* contra.

LUKE, J. In *Sims* v. *State,* 37 *Ga. App.* 819. (142 S. E. 464), the conviction was set aside because the trial judge erred in denying a motion in arrest of judgment, based upon the failure of the indictment to allege an intent to defraud. Omitting its formal parts, the indictment in the present case, based upon the same transaction and drawn under the same section of the Penal Code of 1910, to wit, § 249, charges, E. S. Sims with a felony "for that said accused, in the county of Fulton and State of Georgia, on the 7th day of April, 1927, . . did designedly, by color of the following counterfeit check and writing, to wit:

'Anniston National Bank 64-3, Anniston, Ala., 4/7/1927. Pay to the order of A. M. Sims & Co. $123.80, one hundred twenty-three & 80/100 dollars. J. S. Jamerson,' same being made in the fictitious name of J. S. Jamerson, obtain of and from the Atlanta & Lowry National Bank, a corporation, one hundred and twenty-

three dollars & 80/100 cents in money, the property of said bank, with intent to defraud said bank," etc.

The following appears from the record: The defendant, who was engaged in the business of selling automobile tires in the City of Atlanta, obtained the "O. K." of the check in question by J. S. Kennedy, vice-president of the Atlanta & Lowry National Bank, by representing to him that he knew J. S. Jamerson personally, that Jamerson was in the tire business in Anniston, Ala., and was a customer of his, and that said check was taken in a business transaction. After the vice-president of the bank had approved the check by writing his initials, "J. S. K.," in the corner thereof, the bank paid the defendant the money on the check. A teller from the Anniston National Bank testified that he had held that position for eleven years; that he had opportunity to study handwriting, especially signatures; that the check in question was presented to his bank and protested; that he searched the records in his bank for an account in the name "J. S. Jamerson" and found none; that he tried to find such a person in Anniston, but failed to do so; that he would say that the name, "J. S. Jamerson," and the indorsement, "E. S. Sims," on the check were written by the same person; that while he could not say that the person who wrote the body of the check signed it, he would say that the signature, "J. S. Jamerson," is practically the same as "E. S. Sims;" and the witness believed the same person wrote the name of the payee, "A. M. Sims & Co.," and the name, "E. S. Sims," indorser, on the check,—that this was his opinion, but that he could not swear it. L. P. Whitfield testified that he had studied handwriting since 1912, and represented the American Bankers' Association, and that in his opinion the man who wrote the check indorsed it. Ernest Canton testified that he worked for the defendant in his tire business on the corner of Decatur and Bell streets, but that he did not know anything about a Mr. Jamerson's buying tires there. Miss Mary Sims testified that she was the defendant's sister, and that they had a tire business on Decatur street; that she recalled that a man from Anniston, Alabama, who said his name was Jamerson, bought tires at their place of business twice and gave checks for them; that she was not present when the check for $123.80 was given, and had not been actively engaged in the business for some time prior thereto. F. C. Chastain, who was in

the employ of Sims, remembered that some one bought a load of second-hand tires from them somewhere about the 8th of April, 1927. The defendant stated in substance that he was in the wholesale tire business, and had been doing considerable business with the Atlanta & Lowry National Bank; that he twice sold tires to Mr. Jamerson on previous occasions and Jamerson's checks were good; that when he received a check for $123.80 from the same man, he took it to the bank, told Mr. J. S. Kennedy, the vice-president of the bank, that he had previously had dealings with Jamerson and his check was all right, and that if it was not all right, he, the defendant, would take care of it; that he got the money on the check; that when he, defendant, was arrested, he told Mr. Kennedy that he had no money then, but that he would take up the check the next day; and that he leased his business to a Mr. Chastain, and that during defendant's absence the landlord raided the place and took "all the books and everything." Miss Mary Sims, recalled for the defendant, testified that she and her brother had an account at the Atlanta & Lowry National Bank in the name "A. M. Sims & Co.;" and that a Mr. Head, who was present at a former trial of the case, was not used as a witness at that time. In part, Mr. J. S. Kennedy of the Atlanta & Lowry National Bank testified: "I have been in the banking business about thirty-three years. As teller I had occasion to some extent to study and observe handwriting. I was teller about ten years. Necessarily, in handling checks in the bank, I have studied particularly signatures of persons, writings and indorsements, the making of notes and checks and negotiable papers. Looking at this check, I would say that the name of the payee, A. M. Sims & Company, is unquestionably the same as the indorsement on there, A. M. Sims & Company and E. S. Sims. The signature on the check, J. S. Jamerson, and the indorsement, E. S. Sims, have certain characteristics that are very similar, particularly in the formation of the letter "S," in "J. S. Jamerson" and "E. S. Sims." Each of the three witnesses who testified as to handwriting stated that he might be in error in concluding that the same person had written the different names.

We have not set out all the testimony of the witnesses in the case, but are quite sure that it appears from the foregoing that there was ample evidence to warrant the jury in concluding that the defendant

wrote the check himself, including the signature of "J. S. Jamerson;" that the said name was fictitious; that the intent to defraud existed, and that the bank had been defrauded, and had lost the money paid out by it on the check, including the protest fee. It follows that the court did not err in overruling the general grounds of the motion for a new trial.

Special ground 1, complaining of the admission in evidence of the testimony of J. S. Kennedy as to the handwriting on the check, over the objection that he had not qualified as an expert, is without merit. "An expert is one who by habits of life and business has a peculiar skill in forming an opinion on the subject in dispute. *White* v. *Clements,* 39 *Ga.* 232; *Ala. &c. R. Co.* v. *McKenzie,* 139 *Ga.* 410 (3) (77 S. E. 647, 45 L. R. A. (N. S.) 18)." *Robertson* v. *Ætna Life Ins. Co.,* 37 *Ga. App.* 703 (141 S. E. 504). In *Glover* v. *State,* 129 *Ga.* 717 (9) (59 S. E. 816), it was held: "The question whether a witness offered as an expert is qualified to give his opinion upon a given subject under investigation is one for the court, and not for the witness. Hence the mere fact that the witness, in his testimony, may disclaim to be an expert is no reason for refusing to allow him to testify as one." Surely a witness who was vice-president of a bank, who had been in the banking business for thirty-three years, who had been teller ten years and had "studied particularly signatures of persons," was qualified as an expert on handwriting.

Special ground 2, complaining of the admission in evidence of the alleged original check, because the check so admitted had certain notations on it that were not on the original check, has not the unqualified approval of the trial judge, and is therefore not for the consideration of this court. See *Trammell* v. *Shirley,* 38 *Ga. App.* 710, 711 (145 S. E. 485), citing *Jordan* v. *State,* 153 *Ga.* 167 (111 S. E. 417); *Hayes* v. *Chapman,* 147 *Ga.* 625 (95 S. E. 216).

Special ground 3, complaining of the admission in evidence of "a paper purporting to be the protest of the check," can not be considered, because the paper offered is not set forth in the ground, either literally or in substance, nor attached to the motion as an exhibit. See *Smith* v. *State,* 38 *Ga. App.* 748 (3) (145 S. E. 526); *Thompson* v. *State,* 118 *Ga.* 330 (2) (45 S. E. 410).

Special ground 4 alleges that the court erred in allowing a reading glass to be used by the jury in studying the handwriting which

was in evidence. The objection was "that it is immaterial, irrelevant, and illustrates no issue in this case, and is highly prejudicial." The reading glass was merely an instrument to aid vision and to assist the jury in arriving at the truth. We see no objection to its use. However, this ground was fatally defective, in failing to show injury. See *Herndon* v. *State,* 38 *Ga. App.* 117 (6) (142 S. E. 695) ; *Hunter* v. *State,* 148 *Ga.* 566 (2) (97 S. E. 523) ; *Wilson* v. *McConnell,* 36 *Ga. App.* 767 (1 *a*) (138 S. E. 244).

Grounds 5 and 7 are controlled by the same principles of law. Ground 5 criticises the charge of the court on the weight to be given expert testimony. The complaint is that it was not a correct statement of the law, and was prejudicial and confusing to the jury. Ground 7 complains of the court's charge as to what would warrant a conviction, it being asserted "that this is not a correct statement of the law, and is confusing and misleading." Since the first assignment fails to show wherein the charge was prejudicial and confusing, and the second assignment does not indicate why the charge was confusing and misleading, the only matter for this court to consider is whether or not the excerpts were abstractly correct. Viewed in the abstract, these excerpts appear to be correct. Therefore, neither of these grounds is meritorious.

Ground 6 complains that the court erred in charging the law upon incriminatory admissions, "for the reason that the evidence authorized no such charge, and the same was calculated to mislead and confuse the jury." The ground discloses no reversible error.

Ground 8, based upon alleged newly discovered evidence, is defective and not in proper form for consideration, because the affidavit of the defendant and his counsel as to diligence merely states that neither of them knew of the evidence set out in this ground before the trial of the case, "and that the same could not have been discovered by the exercise of ordinary diligence." As was said in *Trammell* v. *Shirley,* supra, "This was a mere conclusion of the affiants, without basic facts from which the court could judge whether or not they could have discovered the evidence by the exercise of ordinary diligence."

*Judgment affirmed. Broyles, C. J., and Bloodworth, J., concur.*