32144. McDOWELL *v.* THE STATE.

DECIDED DECEMBER 3, 1948.

118

*W. E. Watkins, Benjamin B. Garland,* for plaintiff in error.
*Frank B. Willingham,* Solicitor-General, contra.

TOWNSEND, J. (After stating the foregoing facts.) ■ Special ground 1 contends that the court erred in admitting over objection the testimony of the sheriff to the effect that the defendant stated upon being arrested near the scene where the body of the deceased was found, "You won't find any shot in the body." This testimony was objected to on the ground that the sheriff stated that he had a warrant for the defendant for assault with intent to murder Woody Thurman; that he had no warrant against the defendant for any offense involving the deceased; that it is not shown that he apprised the defendant of any of his constitutional rights or that any statement he made might be used against him as evidence; that a foundation was not laid as to a confession or admission; and that it is otherwise illegal.

Special grounds 10 and 11 contend that the court erred in charging the jury as follows: "The State insists, which the defendant denies, that the defendant, Mote McDowell, has made certain admissions incriminatory in their character. It is a question for you to determine whether or not the State has shown any such inculpatory statements or admissions made by the defendant. An incriminatory admission is circumstantial evidence only and should be scanned with great care. If you find from the evidence that the State has proven to you, beyond a reasonable doubt, that defendant has made such admissions and that they were inculpatory in their character, then you may consider such admissions along with other evidence in the case in determining the guilt or innocence of the defendant." Here in ground 10 counsel for the defendant sets out what he contends the court should have charged, in which he adds to what was charged substantially that such statements, when and if made, must have been freely and voluntarily made without being induced by another by the slightest hope of benefit or the remotest

fear of injury. It is also contended in grounds 10 and 11, that the charge was incomplete, that it was not comprehensive enough to embrace an adequate statement governing admissions, that it could have led the jury to believe that all that was necessary was that it be scanned with care; that it was not authorized by the evidence, that it could have led the jury to conclude that the defendant made some incriminatory admission when all it amounted to was a declaration of innocence, and that it was hurtful to the defendant.

The jury was authorized to find from the evidence that the deceased and Woody Thurman, on February 23, 1947, went out in the section of Butts County where the defendant and his brother, O. B. McDowell, lived; that while shooting dice in O. B. McDowell's house a quarrel arose between Woody Thurman and O. B. McDowell; that the defendant went to his home nearby for a shotgun and upon his return to the home of O. B. McDowell with the shotgun, Woody Thurman and the deceased ran; that the defendant fired and the deceased fell; that the deceased was not seen again by the members of his family for about one week, when the sheriff and others went to a point in the woods near the home of O. B. McDowell and found the deceased in a terribly mutilated condition; that all his vital organs had been removed; that, although his head, feet and limbs were somewhat intact, his torso was little more than a skeleton; that the sheriff had a warrant for the defendant for asault with intent to murder Woody Thurman; that, upon arriving at the scene and finding the remains of the deceased, he arrested the defendant and O. B. McDowell; and that the defendant stated, "You won't find any shot in his body." This statement inferred to the jury that the defendant already knew that the remains of the deceased were there; that he knew it from the time he had shot the deceased a week previously; that in the meantime he had so eviscerated the body as to leave no trace of the shot. It was, therefore, according to one phase of the evidence an incriminatory statement or admission. It did not amount to a confession of guilt. In *Teague v. State*, 48 *Ga. App.* 255 (172 S. E. 571) it was held as follows: "There is a very wide distinction between admitting the main fact and admitting some minor or subordinate fact or series of facts which

could be true whether the main fact existed or not." Even had it been a confession of guilt, there is nothing to indicate that it was not freely and voluntarily made, nothing to indicate that it was induced by another by the slightest hope of benefit or the remotest fear of injury. It must be remembered that when the sheriff left his office he did not know of the death of the deceased, he having found the body at the scene upon his arrival. He did know about the alleged assault on Woody Thurman, and had a warrant for the defendant for this offense. There is no requirement of law that a defendant be apprised of his constitutional rights or that his statements may be used against him. It would have been error had the court charged the law of confessions. See Teague v. State, supra. However, that part of Code § 38-420 which applies to admissions is that "all admissions shall be scanned with care." The court left to the jury the question of whether or not the statement was made, and if made whether or not it amounted to an incriminatory admission. He charged that, if it did amount to an incriminatory admission, it should be scanned with care. The assignments of error complained of in special grounds 10 and 11 are without merit.

■ Special grounds 2 and 3 contend that the trial court erred in admitting over objection testimony of the undertaker, as follows: "In my opinion, based on 15 years of dealing with dead bodies, the vital organs were removed by a human being. I could not swear definitely that they were removed by a human being, but that is my belief, in other words I will say they were removed by a human being." The objection was as follows: "He might be a good undertaker and could take dead bodies and embalm them and the fact that he embalmed this particular body would not qualify him to give an opinion on that;" and also on the further ground that the testimony fails to constitute a definite statement as to his belief and opinion. The objection that the testimony of the witness failed to disclose with definiteness his belief or opinion is not well taken. The testimony discloses that it is the opinion of the witness based on 15 years of dealing with dead bodies. The grounds of the motion fail to disclose whether or not the witness was a licensed embalmer and in this respect are not complete within themselves. However, the language of the objection is such as to indicate that

he is a good undertaker who embalmed bodies and in fact embalmed the body of the deceased in the instant case. Assuming this to be true—he is an expert on the subject of dead bodies and human anatomy. Code § 38-1710 provides as follows: "The opinions of experts, on any question of science, skill, trade, or like questions, shall always be admissible; and such opinions may be given on the facts as proved by other witnesses." Even if he was not a licensed embalmer, whether he has such learning and experience in the profession as to entitle him to be deemed prima facie an expert is a matter addressed to the discretion of the trial court. See *Clary* v. *State*, 8 *Ga. App.* 92(2) (68 S. E. 615). Here it was no abuse of the discretion of the court in permitting the witness to testify. The weight and credibility to be given the opinion of the witness was for the jury. See also *Lanier* v. *State*, 141 *Ga.* 17(3) (80 S. E. 5). Special grounds 2 and 3 are without merit.

■ Special ground 4 contends that the corpus delicti was not established by either direct or circumstantial evidence.

Special ground 5 contends that the allegations of the indictment that the defendant "did kill and murder Marvin Thomas by shooting him with a gun and inflicting injuries and wounds upon his body and by an instrumentality unknown to the grand jury," are unsupported by the evidence.

Special ground 6 contends that the trial court erred in failing, without request, to charge the jury as to the requisites of establishing the corpus delicti. Corpus delicti means, when applied to any particular offense, the actual commission by someone of the particular offense charged. See 9 Words and Phrases, 749. In the instant case there was evidence that the defendant fired on the deceased as he ran and that the deceased fell. The body of the deceased was found in close proximity of this happening approximately one week later so mutilated that it could not be determined whether or not it had been pierced by shot from a gun. The testimony of a doctor disclosed that there was a hole in the right scapula, the flat bone back of the shoulder blade, the doctor testifying that he would not say a bullet went through it, but it was a good-sized hole. The undertaker testified in substance that it was his opinion that the body was mutilated by human hands. Upon being arrested the defendant stated,

"You won't find any shot in the body," thus implying that he knew the body was there, had already examined it, and knew that no shot were in it. The jury also could have inferred that he mutilated the body for the purpose of concealing gunshot wounds.

The judge charged the jury as follows: "Now, gentlemen of the jury, if after a careful analysis of the evidence in this case, the rules of law I have given you in charge, including the defendant's statement, you believe that the defendant killed the person named in the indictment, in the manner therein charged, with an instrument that, in the manner in which it was used, was a weapon likely to produce death, and without circumstances of justification or mitigation, under the instructions hereinbefore given you, then you would be authorized to find the defendant guilty of murder. . . On the other hand, gentlemen of the jury, if you do not believe the defendant is guilty of any offense or if you have a reasonable doubt in your minds as to his guilt . . it would then be your duty to acquit him." The judge also charged the jury as follows: "Gentlemen, I charge you, if you find the wound received by the deceased was not mortal, if there was such a wound, and that death resulted solely from other causes, then the defendant would not be liable and it would be your duty to acquit him." The court also charged the jury fully as to the definition of murder and voluntary manslaughter. If the defendant desired an elaboration on the subject of corpus delicti, he should have duly requested the same in writing. See *Buckhanon* v. *State,* 151 *Ga.* 827 (108 S. E. 2d, 209), headnote 8, and the corresponding division of the opinion.

The corpus delicti was sufficiently established by the evidence. The evidence was also sufficient to establish the allegations in the indictment as to the manner in which the deceased was killed by the defendant. In the absence of request, the charge is not error for failure to instruct the jury as to the requisites of establishing the corpus delicti.

The assignments of error contained in special grounds 4, 5, and 6 are without merit.

■ Special ground 7 contends that the trial judge erred in charging the jury on the defendant's statement, because he failed to include therein the provision that "they may believe it in

whole or in part." The judge charged the language of Code § 38-415, which provides for the making of a statement by the defendant in a criminal case. A charge on the prisoner's statement in the language of the Code is not only sufficient but has been held to be the better practice. See *Taylor* v. *State,* 132 *Ga.* 235(1a) (63 S. E. 1116); *Douberly* v. *State,* 184 *Ga.* 573, 575(4) (192 S. E. 223). This assignment of error is without merit.

■ Special ground 8 complains that the trial court erred in charging Code § 26-1014 and certain explanations of this defense. A part of the charge excepted to is that wherein the judge told the jury that this Code section applies only where there was a mutual intent to fight or a mutual combat, and that it does not limit or qualify the defense of justifiable homicide in self-defense against one who manifestly intends and endeavors by violence and surprise to commit a felony on another. He also charged, as another part excepted to, that the application of this Code section does not limit the defense of justifiable homicide where the person killing acted under circumstances sufficient to excite the fears of a reasonable man. Another part of the excerpt excepted to is as follows: "I charge you that, if you should determine from all the evidence and the defendant's statement that there was an intention upon the part of the deceased to enter into a mutual combat with the defendant and the defendant also determined to enter in mutual combat with the deceased, both having an intention, at the time, to fight, and that if, under these circumstances, the defendant shot and killed the deceased, it must appear, before the defendant could be held guiltless under the law, that the danger to him at the time of the shooting was so urgent and pressing that in order to save his own life the killing of the deceased at the time was absolutely necessary, and it must appear also that the deceased at the time was the assailant, or it must appear that the defendant had really and in good faith endeavored to decline any further struggle before the mortal wound was inflicted."

Code § 26-1014 is applicable only in cases of mutual combat. See *Jones* v. *State,* 172 *Ga.* 500(3) (158 S. E. 44). Before the defendant can rely upon the defense provided for in this Code section, he must have declined further struggle. See *Killen* v.

*State,* 50 *Ga.* 223. Under the evidence, when Woody Thurman, who was the companion of the deceased, got into a difficulty in the course of the dice game with O. B. McDowell, his brother, the defendant, said, "Wait until I get back" and went to get his gun. While there is no evidence that there was any difficulty between the defendant and the deceased prior to the shooting, there is evidence that the deceased and Woody Thurman came to the home of O. B. McDowell together; that O. B. McDowell and the defendant are brothers; that they lived very close to each other; that, when the trouble came up between Woody Thurman and O. B. McDowell, the latter grabbed his shotgun and Thurman grabbed him and took the gun away from him. It was then that the defendant went for his gun. When he returned, both the deceased and Thurman ran, and the deceased was shot. The evidence authorized a charge on mutual combat.

The charge complained of was not error for any of the reasons assigned, and special ground 8 is without merit.

■ Special ground 9 contends that the court erred in charging the jury to the effect that, when individuals associate themselves in an unlawful enterprise, any act done in pursuance of the conspiracy by one of the conspirators in legal contemplation is the act of all and that each is responsible for the acts of the others only so far as such acts are reasonably done in furtherance of the conspiracy. The court charged the jury in this connection that whether or not there was a conspiracy in this case was a question for their determination. This charge is contended to be error on the grounds that there was no evidence of a conspiracy between the defendant and his brother.

The evidence detailed in division 5 of this opinion was sufficient to authorize the charge on the question of conspiracy. This charge was, as given, a substantial statement of the law on the subject as applied to the evidence in the instant case. This ground of the amended motion is without merit.

■ Special ground 12 contends that the trial court erred in charging the jury as follows: "The true question in criminal cases is not whether it be possible that the conclusion at which the testimony points may be false, but whether there is sufficient testimony to satisfy your minds and consciences that the de-

fendant is guilty of the crime, as charged, beyond a reasonable doubt."

This charge is almost in the exact language of Code § 38-110, and to give it in charge in a criminal case is never error. See many cases annotated under this Code section, catchword "Charge."

■ Special ground 13 contends that the trial court erred in failing to charge, without request, the definition of "reasonable doubt." It is not error, in the absence of request, to fail to attempt a definition of these words. See *Thigpen* v. *State,* 11 *Ga. App.* 846 (2) (76 S. E. 596); *Hall* v. *State,* 12 *Ga. App.* 572 (3) (77 S. E. 893).

■ Evidence that would authorize the conviction of the defendant for manslaughter in the instant case has hereinbefore been set out in connection with the discussion of the various grounds of the amended motion for a new trial. The evidence, therefore, authorizes the verdict. Where the verdict is supported by some evidence and is approved by the trial court, this court is without authority to interfere. See many cases cited under catchword "Approval", Code (Ann.), §70-202. The general grounds of the motion for a new trial show no cause for a reversal of this case.

*Judgment affirmed. MacIntyre, P. J., and Gardner, J., concur.*