### 32770. CORBIN *v.* THE STATE.

DECIDED MARCH 3, 1950. REHEARING DENIED MARCH 24, 1950.

*Poole, Pearce & Hall, William F. Lozier,* for plaintiff in error.
*Paul Webb, Solicitor-General, William Hall,* contra.

MacINTYRE, P. J. The defendant, Claude Corbin, was indicted for the unlawful possession of dynamite. He was tried, convicted, and sentenced to serve from two to five years in the penitentiary and to pay a fine of $2000. He made a motion for a new trial based upon the general grounds and eight special grounds. The court overruled the motion and the defendant excepted.

1. The defendant contends that the following testimony of the witness Robert H. Cording: "It would take a great deal of force or a terrific explosion to move a fifteen hundred pound meter a distance of three inches," was erroneously admitted in evidence over the objection that it was a conclusion of the witness and that the witness had not been properly qualified as an expert to give in his testimony such conclusion or opinion. The fifteen hundred pound meter here referred to was a part of the machinery, or mechanical apparatus, of the White Provision Company. The witness Cording also testified: that he was chief engineer at the White Provision Company, at whose plant the alleged explosion took place; that he had been employed there for about sixteen years; that he had received his education at Carnegie Institute of Technology, from which he graduated in 1923 with a degree in mechanical engineering; that he first worked for Westinghouse installing machinery, etc., then with

Swift & Company, Construction Department, before he went with White Provision Company; that as chief engineer of the White Provision Company he was charged with the duty of maintenance and repair and installation of all equipment, new buildings, repairs to old buildings, and anything to do with the physical plant, including mechanical devices and electrical apparatus. This witness qualified prima facie as an expert and was entitled to give his opinion on this subject, based upon his observations. Additionally, the witness stated the facts upon which his opinion was predicated. When an expert testifies to facts within his knowledge, it is not necessary that the question propounded be stated hypothetically. An expert may base his opinion upon facts which he knows and has observed. *Sims* v. *State*, 40 *Ga. App.* 10, 13 (148 S. E. 769); *McDowell* v. *State*, 78 *Ga. App.* 116 (50 S. E. 2d, 633); *Metropolitan Life Ins. Co.* v. *Saul*, 189 *Ga.* 1 (2) (5 S. E. 2d, 214); *Clary* v. *State*, 8 *Ga. App.* 92 (2) (68 S. E. 615); *Davis* v. *State*, 153 *Ga.* 669, 674 (113 S. E. 11); *Yates* v. *State*, 127 *Ga.* 813 (56 S. E. 1017); *Wallace* v. *State*, 204 *Ga.* 676 (51 S. E. 2d, 395).

2. Special ground 2 complains of the admission in evidence of the following testimony, over objection: "At the time of the explosion a strike had been in progress about a month. It was a very turbulent strike, constant succession of incidents." The objection made to the admission of this testimony was: "Your Honor, I object to that on the grounds that it's both irrelevant and immaterial to the issue which is on this bill of indictment." Irrespective of whether the objection is too general to raise a question for determination by this court (See *Owen* v. *State*, 78 *Ga. App.* 558 (2) (51 S. E. 2d, 602), the evidence was admissible to show motive. In 1 Wharton's *Criminal Evidence* (11th ed.), pp. 288, 307, §§ 246, 255, it is written: "Section 246: . . It is, however, always proper for the prosecution to offer evidence of motive. . . An inquiry in this regard is often of great importance, particularly in cases of circumstantial evidence. It assists in fixing the crime upon the proper person, and, in some cases, is strongly instrumental in determining the degree of the offense. . . In the introduction of evidence to show motive, a wide range is permitted. . . Any fact which logically tends to show a motive or which fairly tends to explain

the actions of the accused, should be admitted. Thus, evidence of ill-feeling and trouble between accused and the victim of a homicide, or of improper relations or affections of the accused for the wife of the deceased is admissible. . . Section 255: Evidence of previous quarrels and ill feeling is always relevant to show motive, with the limitation that a connection be shown to exist between the difficulty and the crime charged. . . Quarrels between the families of the accused and of the deceased; dissatisfaction with a previous settlement of wages between the parties . . may be shown." The following Georgia cases are in accord with the foregoing principles: *Pulliam* v. *State,* 199 *Ga.* 709 (35 S. E. 2d, 250) ; *Johnson* v. *State,* 130 *Ga.* 22 (2) (60 S. E. 158) ; *Weldon* v. *State,* 158 *Ga.* 140 (4) (123 S. E. 217) ; *Ricks* v. *State,* 206 *Ga.* 20 (55 S. E. 2d, 576).

"On a motion for a new trial on the question of whether a judgment should be reversed on account of the introduction of evidence injected into the case which the defendant contended was irrelevant and immaterial, the defendant's statement and the whole evidence, properly admitted, that introduced before and that introduced after the ruling on the admissibility of the evidence in question, may be considered in determining the relevancy and materiality of such evidence. *Fuller* v. *State,* 197 *Ga.* 714 (2), 718 (30 S. E. 2d, 608) ; *Holland* v. *Bell,* 148 *Ga.* 277 (2) (96 S. E. 419)." *Hardison* v. *State,* ante, 345. Considering the entire evidence, the evidence here objected to was admissible in that it was relevant and material upon the question of motive.

3. Special ground 3 complains of the refusal to permit the witness Cording, on cross-examination, to answer the following question: "Now, as far as you know, they could have made changes in the physical surroundings of the area between the time you were out there, on Thursday morning, and the time these pictures were made?" The rule is that " 'the trial judge had a discretion to control the right of cross-examination within reasonable bounds, and an exercise of this discretion will not be controlled by a reviewing court, unless it is abused.' *Rogers* v. *State,* 18 *Ga. App.* 332 (2) (89 S. E. 460) ; *Granison* v. *State,* 49 *Ga. App.* 216 (174 S. E. 636) ; *Fields* v. *State,* 46 *Ga. App.* 287 (3) (167 S. E. 337)." *Aycock* v. *State,* 62 *Ga. App.* 812,

815 (10 S. E. 2d, 84). We think that the prior cross-examination had sufficiently developed what knowledge the witness had as to whether a change had been made in the surroundings of that area between the time the witness was there on Thursday morning and the time the pictures in question were made and we think that the court did not abuse his discretion in not allowing the defendant to continue this cross-examination on this matter by asking the question here, which was more in the nature of arguing with the witness than in the form of cross-examination. We do not think that the court committed reversible error in not allowing the question to be answered.

4. Special ground 5 complains of the court's failure to declare a mistrial on account of certain improper remarks made by the assistant solicitor during the progress of the trial. The remarks complained of and the action taken by the court are as follows: [1.] "Q. (By Mr. William Hall, Assistant Solicitor for the State): 'Mr. Lozier asked you how many explosions that you had observed in your lifetime. I ask you, whether shortly after this dynamite explosion here in Atlanta, that you—your company also had an explosion down in Moultrie, Georgia, which dynamite was used in connection with a strike by the C.I.O. Union which was in progress down in Moultrie, Georgia?' A. (By Mr. Robert H. Cording, Witness for State): 'Yes, Sir.' The Court: 'Wait just a minute, Mr. Cording.' Mr. Lozier (Counsel for movant): 'Your Honor, I object to that on the ground that it is irrelevant and immaterial; it's highly prejudicial to the defendant in this case and I ask that the court declare a mistrial.' The Court: 'I overrule the motion. I sustain the objections and I instruct the jury to disregard the question and answer last asked of the witness and answered by the witness.' [2]. Q. (By Mr. William Hall, Assistant Solicitor for the State): 'Did you go to Moultrie at the time they had the explosion down there?' A. (By Mr. Robert H. Cording, Witness for State): 'No, sir.' Mr. Lozier (Counsel for Movant): 'Your Honor, I object to that question. The solicitor has stated a fact that there was an explosion at Moultrie. I think it's highly prejudicial to the defendant in the case and I ask the court to declare a mistrial.' The Court: 'I overrule the motion.' Mr. Lozier: 'I ask that the question be stricken, your

Honor, on the ground it is irrelevant and immaterial. Mr. William Hall: 'I ask your Honor to strike it from the record. You can come down.' The court: 'It is stricken.'" This ground really contains objections to two rulings of the trial court. The first question posed by the assistant solicitor, under the evidence and the circumstances of this case, was inaptly worded, but the court itself interrupted the witness in answering the question, and upon the objection of counsel for the defendant to the question and motion for mistrial, the court overruled the motion to declare a mistrial and instructed the jury to disregard the question and answer. We think that in view of the corrective measure taken by the court it did not commit reversible error in refusing to grant the motion for mistrial. *Herring* v. *State*, 10 *Ga. App.* 88 (2) (72 S. E. 600); *Daniels* v. *State*, 58 *Ga. App.* 599, 600 (3) (199 S. E. 572); *Loomis* v. *State*, 78 *Ga. App.* 153, 179, (51 S. E. 2d, 13).

As to the second question complained of in this ground, counsel for the defendant had asked the State's witness, Mr. Cording, how many dynamite explosions he had seen in his lifetime for the purpose of adversely reflecting upon his credit as an expert. The State could question him on redirect-examination regarding the particular dynamite explosions he had seen, for the purpose of explaining and neutralizing, if it could, the effect of his testimony on cross-examination. *Cameron* v. *State*, 66 *Ga. App.* 414 (3) (18 S. E. 2d, 16). And, if the assistant solicitor intended to, and could, connect this question with the fact that the witness Cording had seen a dynamite explosion in Moultrie, the question would not have been improper. However, the defendant's counsel objected to this question on the ground that the assistant solicitor had stated a fact that there was an explosion in Moultrie, which was highly prejudicial to the defendant in this case and had asked the court to declare a mistrial. Thereafter the assistant solicitor requested that the question be stricken by the court and the court struck it. We do not think that the asking of this question, under the circumstances, shows a cause for a mistrial.

5. In special ground 6 the following assignment of error is made: "The following material evidence was illegally admitted by the court to the jury, over the objection of movant,

to wit: Officer S. E. Smith: 'When I talked with Claude Corbin, the defendant on trial, concerning this case we are now trying, he stated, to start off with, that Mr. Capp comes to him and wanted an automobile for transportation to carry employees from one picket line to the other, from Swift out on Peters Street over to White Provision on Howell Mill Road; he said that he couldn't rent a car but his mother could, she had been renting U-Drive-Its, so they went over there and got his mother, Mrs. Corbin, to go up to Belle Isle U-Drive-It and rent a 1947 green two-door; this they used for a day; he said that Mr. Capps paid for it one time, Mr. Kirkpatrick paid for it again and then Mr. Foreman paid for it again, each one of them men being a leader in the C. I. O. Union and so they went back the second time, they wanted the car again, they suggested that they go back and get Corbin's mother to carry the car back in, check it back in and check it back out to use the next day, which they did; they went to his house and she took the car and, at the time, Mrs. Corbin made the statement in the presence of her son that she didn't want to do that, and so Mr. Capps assured her that the boy wouldn't get into any trouble if she would go ahead and rent the car, which she did; Mr. Corbin — Mr. Capps stayed there at the house, Mrs. Corbin's house on Capitol Avenue, 447, until she returned with the car; after she returned with the car, he and Mr. Capps got in the car, went back over to Swift's tent, picket line, and—the tent on Peters Street, picked up three other negroes and went to White Provision tent on Howell Mill Road and there he stated that they stayed around for a while and they laid down in the car and slept a while, messed around there until later on and then Mr. Capps went back to the Swift tent on Peters Street, then he picked up two negro boys; at the time he didn't know their names, he said he didn't know the boys' names; picked up these two boys and went out on Howell Mill Bridge Road running right along the northwest side of the White Provision building, stopped and looked the situation over and said he drove around, drove back, drove around the block and then come back and stopped again and the two boys, the two negro boys, he said went down under the railroad with the package of dynamite that they had; he stated to me from where they had obtained the dynamite; he

stated that he didn't remember who told him where it was but said the package, "You will find it in the tent under a bench, hid under the sawdust in the picket tent," and that's where he said he found it, right there, and I tried to get him to tell me who it was that told him it was there and prepared and ready to go and he said he couldn't remember that. As to whether this defendant, Corbin, stated whether he went in the tent and personally got the dynamite or whether one of the negroes went in; well, to the best I can recollect on that, he went in there and this boy, Clark, negro Clark, he told him, said, "We have got a job to do"; Corbin went in and found the dynamite to be right where the man had told him it was and I have forgotten whether he said he put it in the car or the negro put it in there or vice versa, one of them did; he said the three of them got in the car and left and drive out beyond this bridge on Howell Mill Road, right by the side of White Provision; when they arrived out there, this defendant said that he go out of the car, the two negroes got out of the car and went down under the bridge, prepared the dynamite and one of them come back up, didn't have a match and he went across over there and got a match from a negro on a—that was working over there at that slaughtering pen, or abattoir, and then he went back down there and when he did, after the negro loaned him the match, the negro started walking back toward Mr. Corbin and Mr. Corbin walked over, to him and said, "I expect you had better be walking back yonder way," and he said they were under there a few minutes and they come running back up and said, "Let's go," and said he got under the steer-wheel, drove the car, himself, one of the negroes got in the back seat and the other one got in the front seat with him, they went up the first street turned to the right and went out to Peachtree Station, out on Peachtree Road, and come back into town that way. He stated that the dynamite was taken out by one of the negroes and carried down there to blow up the gas main that runs into the White Provision Company. As to whether he stated whether they put the dynamite near the gas main that runs into the White Provision Company: I can't recall that he even knew exactly where the negroes put it, that he did not go down under the bridge himself, that he stayed up there and watched. Q. 'Did he say anything about

whether or not the dynamite was ignited while they was down there?' A. 'Well, I asked him that particular question; I asked him did he hear the explosion when it went off; he said no, he didn't he left there at a high rate of speed and went in the first street and he heard by some other employees later the next morning, that he heard the dynamite did go off. As to whether I brought this defendant's mother into the county police office on the third floor of this courthouse while the defendant was there: She was present there but, as to going out to her house and bringing her in, Mr. Reed did. As to whether she arrived down there while the defendant was in custody making this statement; she was present at all times. In the presence of this defendant, his mother made a statement with respect to this green automobile that she testified about; she made the statement that at the time she rented it the first time she really thought they were going to use the car for transporting pickets from line to the other; then, after they come back the second time and wanted to turn it back in and re-rent the car, then she felt like something was fixing to take place and she asked them not to do it and said that was when Mr. Capps assured her that "I will assure you that your boy won't get into any trouble." In connection with this case we subsequently arrested a negro by the name of Albert Clark. Albert Clark made a statement to us concerning this case in the presence of this defendant and this defendant did not make any denial or refutation of the statement that Albert Clark made when it was made. This defendant did not make any denial or refutation of the statement that his mother made in my presence.'

"(a) Movant objected to the evidence before it was offered, after cross-examining the witness, Officer S. E. Smith, as to the circumstances surrounding the making of the alleged confession or admission by movant to said Officer Smith, and movant then and there after cross-examining Officer Smith, urged before the court the following grounds of objection: 'Your Honor, I object to any testimony the witness may give as to the signing the alleged written statement on the ground that the questioning of the witness shows it was not freely and voluntarily made, it was made under circumstances of emotional pressure, emotional strain, such that a man should not be held to it.'

"In the cross-examination of Officer S. E. Smith prior to his testimony as to the statement made to him by movant, Officer Smith testified, in part: 'Then we brought him back here to the third floor and up until that time he was still denying he had anything to do with it. When we brought him back here to the third floor of the Fulton County Courthouse, we took him down to the detectives office and O. T. Jones, Hubert Reed, Burton Carroll, Mrs. Corbin, his mother, and myself were present. His mother was present when he made this statement; she was weeping and crying, she was the one that was begging him to tell the truth about it . . I did not tell him it would be a lot easier on him if we got this written statement from him; we kept ironing into him and telling him anything that he said would have to be freely and voluntarily and he broke and started telling the truth in the presence of his mother and then we asked him would he put that in writing, knowing that it would be used against him in court; he said, "I will." '

"Movant shows that at the time State's Exhibit No. 4 was tendered in evidence, movant objected to its admission; State's Exhibit 4 was a written document, characterized as a confession by movant, . . Movant objected to the evidence as soon as and at the time it was offered, and then and there urged before the court the following grounds of objections: 'Your Honor, I object to the admission of it on the grounds, that under testimony of the witness, it was taken at a time when his mother was confined in a small room with four police officers and his mother was crying; on the grounds that any admission or confession taken under circumstances like that is not voluntary and under the free will of the party giving the information.' "

For a comprehensive discussion of the rules relating to the admission of confessions, see *Bryant* v. *State,* 191 *Ga.* 686 (13 S. E. 2d, 820); *Collins* v. *State,* 199 *Ga.* 830 (35 S. E. 2d, 452); *Mathis* v. *State,* 55 *Ga. App.* 727, 729 (191 S. E. 272). Applying the rules stated in these cases to the facts of this case, this ground of the motion for a new trial is not meritorious.

6. In special ground 7 it is contended that a mistrial should have been declared on account of argument of State's counsel that "This was one of the most dastardly acts in the annals of Fulton County's history." We think that the State's counsel

in the instant case was within the domain of the construction of the evidence as distinguished from unwarranted abuse and was not going outside of the facts in the record and the legitimate inferences deducible therefrom. Under the evidence it is just as legitimate for the State's counsel to argue that this was one of the most dastardly acts in the annals of Fulton County's history as it is for counsel for the accused to argue that he is an innocent man and that the explosion was an accident, or that if anyone had blown up this part of the employer's plant, it was someone other than the defendant, or that he was being persecuted because he was a member of the picket line of the C. I. O., who were picketing the plant on strike. Both would be conclusions drawn from the evidence. Neither may be right. Each is within the legitimate limits of argument, and the trial court did not err in overruling the motion for a mistrial. *Byrd v. State,* 78 *Ga. App.* 824, 833, (52 S. E. 2d, 330).

7. "A conviction may be lawfully had upon a free and voluntary confession though the same be not otherwise corroborated than by proof of the corpus delicti." *Wimberly v. State,* 105 *Ga.* 188 (1) (31 S. E. 162). Having held in division 5 of this opinion that the jury was authorized to find that there was a confession, freely and voluntarily made, by the defendant, of the offense charged in the indictment of unlawful possession of dynamite, and since we think the corpus delicti was established by the evidence, the jury was authorized to find that the defendant was connected with the crime charged by his own confession; and, surely, his own confession is as strong proof to show his connection therewith as the strongest chain of circumstances. *Miller v. State,* 60 *Ga. App.* 682 (4 S. E. 2d, 729). The evidence authorized the verdict.

8. Special grounds 4 and 8 were expressly abandoned in the brief of counsel for the defendant and have not, therefore, been considered.

For the foregoing reasons the court did not err in overruling the motion for a new trial.

*Judgment affirmed. Gardner and Townsend, JJ., concur.*

ON MOTION FOR REHEARING.

MacINTYRE, P. J. The plaintiff in error contends in his motion for a rehearing that this court overlooked the case of *Reid*

v. *State,* 56 *Ga. App.* 112 (191 S. E. 657), in its ruling in division 4 of the opinion here in question. We carefully considered that case but thought the facts of the instant case brought it under the rule stated in *Herring* v. *State,* 10 *Ga. App.* 88 (2) (supra), and not the rule stated in the *Reid* case, supra. This and all other matters in the motion having been considered, the motion for rehearing is

 *Denied. Gardner and Townsend, JJ., concur.*

# CASES

## DECIDED IN THE

# COURT OF APPEALS OF GEORGIA

### AT THE

### APRIL TERM, 1950